FRANK B. FREAR, Plaintiff, *v.* ALFRED H. LEWIS, Appellant, Impleaded with BERTRAM E. GENDAR, Defendant.

J. NOBLE HAYES and MILDRED L. WEATHERBY, Respondents.

Second Department, June 9, 1922.

Trial — discontinuance — consent by plaintiff to discontinuance given and accepted in fraud of rights of plaintiff's attorney and assignees — discontinuance not granted on said consent — right to discontinue action not absolute — plaintiff's attorney not confined to remedy under Judiciary Law, § 475 or to suit in equity.

The court will not grant an order for the discontinuance of an action on the application of the defendant based on the written consent of the plaintiff where said discontinuance was opposed by the attorney for the plaintiff, and by an assignee of a part of the plaintiff's cause of action, where it appears that the plaintiff is financially irresponsible; that his attorney has been engaged in this litigation for more than ten years and has personally advanced money to pay the expenses thereof; that the attorney's compensation was, by agreement between the plaintiff and the attorney, to be contingent upon recovery; that it was not shown how the consent was obtained by the defendant's attorneys from the plaintiff or whether the plaintiff received or was promised any compensation in return for his signature to his consent to discontinue the action; that the plaintiff had assigned a part of his cause of action to a third person; that his divorced wife had a claim for unpaid alimony, and had sequestrated any interest possessed by the plaintiff in the subject-matter of the action; that the plaintiff, a confirmed dipsomaniac, had stated that he would settle the action so as to deprive his attorney of any compensation on the ground, which was unwarranted, that the attorney was responsible for delays in the prosecution of the action, and that for several weeks after the consent to discontinue was signed the plaintiff continued to consult with his attorney as to the prosecution of the case.

While, as a general rule, a party who has commenced an action may discontinue as of right and his reasons for such discontinuance are not ordinarily of concern

to the court, the right to discontinue is not absolute, for it is necessary to obtain the consent and order of the court permitting the discontinuance and the court has control over litigations on its calendar sufficient to prevent the consummation of any scheme that under guise of settlement will operate to cheat one of its officers out of his compensation for faithful services.

Plaintiff's attorney was not confined to the remedy afforded by section 475 of the Judiciary Law or by a suit in equity to foreclose his lien, but had the right to ask the court to exercise its inherent power to continue the action to protect his rights.

It would seem also that the court in considering the propriety of permitting the proposed discontinuance, might consider the rights of those not parties to the record, who will be defrauded if the discontinuance is permitted.

APPEAL by the defendant, Alfred H. Lewis, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 29th day of June, 1921, confirming the report of an official referee, denying defendant's motion to discontinue and ordering the continuance of the action for the protection of the lien of plaintiff's attorney and that of an assignee of part of plaintiff's cause of action.

*Andrew F. Van Thun, Jr.,* for the appellant.

*J. Noble Hayes,* in person and for the respondent Weatherby.

Order affirmed, with ten dollars costs and disbursements, upon the opinion of HON. M. H. HIRSCHBERG, Official Referee.

BLACKMAR, P. J., RICH, KELLY, JAYCOX and YOUNG, JJ., concur.

The following is the opinion of the official referee:

MICHAEL H. HIRSCHBERG, Official Referee:

The defendant Alfred H. Lewis moved at the Special Term of the Supreme Court, Kings county, Hon. JAMES C. VAN SICLEN presiding, for an order discontinuing this action, without costs, on a consent to discontinuance signed by the plaintiff March 12, 1919. The discontinuance was opposed by the plaintiff's attorney, J. Noble Hayes, as in fraud of his rights under a contingent contract for compensation for legal services performed in the action. The affidavits of the plaintiff's daughter, Mrs. Mildred L. Weatherby, and of a New Jersey attorney, Paul G. Roder, each assignees of a portion of plaintiff's interest in the subject-matter of the cause of action, were also submitted in opposition to the discontinuance.

On May 20, 1919, the Special Term made an order referring the matter to me as official referee to take such testimony as might be offered by the parties and to report the same with my opinion on the question, " whether the aforementioned consent to the discontinuance of the above-entitled action made, executed and acknowledged by the plaintiff on the 12th day of March, 1919, and delivered to the defendant was given by the plaintiff and

accepted by the defendant in fraud of the rights of J. Noble Hayes, as attorney for the plaintiff, and the rights of others claiming an interest in the plaintiff's cause of action." Prior to the making of this order of reference the case had been referred to me as such official referee to take and state the accounts between the parties and it was while such reference was pending before me and before the taking of testimony therein that the plaintiff's consent to discontinuance was produced by the defendant's attorney and the motion for a discontinuance made and that matter referred to me for a preliminary report thereon.

Consequently no testimony has been taken on the matter of the stating of the accounts between the parties, but I have taken such testimony from time to time as the parties have offered on the question presented by the attempt to discontinue and that matter has only recently been finally submitted to me by the parties. On that hearing there also appeared before me one Thomas S. Doughty, as attorney for the plaintiff's former wife, and filed a certified copy of an order of the Supreme Court of this State purporting to sequestrate and attach any interest possessed by the plaintiff in the subject-matter of this action on account of the said former wife's unpaid alimony and he objected to the consummation of the said discontinuance as a fraud upon said former wife's rights.

Neither the plaintiff nor any witness in support of the good faith of the consent to discontinuance were produced upon the hearings. The testimony of those questioning the good faith of this proposed discontinuance is, therefore, uncontradicted.

The action was instituted on or about January 29, 1910, for an accounting of the partnership affairs of the firm of Lewis & Frear. Prior to that time, and during a number of years, the plaintiff and the defendant Lewis had conducted as such firm a lucrative fire insurance agency and brokerage business, with offices in Brooklyn, but dissensions arising between them, Lewis sought to dissolve the firm and formed a new partnership with the defendant Gendar under the firm name of Lewis & Gendar.

The plaintiff then retained Mr. Hayes and instituted this action against his former partner Lewis and against Gendar for an accounting.

Mr. Hayes' original retainer with the plaintiff was on a *quantum meruit,* but during the course of the litigation, and on January 5, 1912, the following written contract was executed between them:

" FREAR *v.* LEWIS AND GENDAR.

" This agreement entered into this 5th day of January, 1912,— witnesseth that for and in consideration of professional services

heretofore rendered in the above entitled action pending in the Supreme Court of Kings County for a partnership accounting and services agreed to be rendered by J. Noble Hayes, Esq., as my attorney, and counsel in the further prosecution of the said suit up to the trial and entry of judgment therein, I hereby assign to said Hayes one-fourth ($\frac{1}{4}$) of any sum that I may recover on account of said claim or suit against the defendants or either of them, howsoever, either by settlement or judgment.

Dated this 5th day of January, 1912.

"J. NOBLE HAYES

"Witness by                                    FRANK B. FREAR.

   "EDWIN VANDEWATER."

The action was tried at the Special Term, Kings county, April, 1913, and judgment entered dissolving the partnership of Lewis & Frear, but holding that the good will of the firm was of no value and directing that the partner's accounts be settled before a designated official referee in Kings county. The plaintiff appealed and on the appeal succeeded in obtaining a modification of the interlocutory judgment and findings to the effect that the good will was of some value and awarding the plaintiff costs payable from the assets of the firm, if any. (See *Frear* v. *Lewis*, 166 App. Div. 210.)

In 1915 the case was again before the Appellate Division on an appeal by the defendant Lewis from an order permitting an inspection of the books and papers of the firms of Lewis & Frear and Lewis & Gendar for the purposes of said reference, and the court reversed the order as unnecessary in view of the fact that the books could be produced before the referee by *subpœna duces tecum*. (See *Frear* v. *Lewis*, 170 App. Div. 598.)

Thereafter hearings were had before an official referee in Kings county and the referee ultimately held that the good will was only worth the sum of $1,100, being the average of one month's profits during the latter part of the existence of the partnership and that the plaintiff was indebted to the defendant Lewis in a large sum as a balance on account.

The plaintiff successfully opposed the confirmation of this report at a Special Term of the Supreme Court, Hon. RUSSELL BENEDICT presiding. Mr. Justice BENEDICT wrote an opinion sustaining the plaintiff's contentions regarding the proper method of appraising the value of the good will of the firm of Lewis & Frear and ultimately the order was made referring the case to me to take and state the accounts of the parties.

It will readily be seen from the foregoing statement of the

history of this litigation that the plaintiff's attorney had performed services of substantial value in a bitterly contested and extremely protracted litigation and had succeeded in some of his contentions on behalf of his client at the time that the client and the defendant Lewis sought to discontinue the litigation on the plaintiff's consent.

It appears beyond question from the testimony taken before me that the plaintiff is financially irresponsible. His wife had obtained a divorce from him and a judgment for alimony at the rate of $10 a week in 1909, and with the exception of $700 obtained by her from the proceeds of a judgment recovered by plaintiff against Lewis in 1913, she has been unable to collect anything on account of that claim. She is a hopeless invalid and apparently her only hope of ever realizing anything upon the large accumulated arrearage of unpaid alimony is through proceedings against plaintiff's interest in any judgment that may be recovered in this action if the action is successfully prosecuted to judgment against the defendants.

February 28, 1916, plaintiff made an agreement in writing with one Paul Roder, a counselor at law of Newark, N. J., whereby in consideration of professional services theretofore performed by Roder for plaintiff and moneys theretofore loaned by Roder to plaintiff, the plaintiff sold and assigned to Roder twenty-five per cent of his interest in the subject-matter of this litigation. This assignment recognized Mr. Hayes' twenty-five per cent contingent agreement and specifically mentioned plaintiff's " indiscretions and loose personal habits." December 14, 1916, plaintiff, by instrument in writing, assigned and sold on like consideration to Roder ninety-five per cent of his interest in the subject-matter of this litigation, specifically retaining five per cent for himself; and by agreement dated the same day Roder agreed to pay to plaintiff forty-five per cent of any money received by Roder on final judgment or settlement in this case.

Subsequently Roder executed an assignment of all the interest acquired by him from the plaintiff under the documents of February 28, 1916, and December 14, 1916, to the plaintiff's daughter, Mrs. Mildred L. Weatherby, she agreeing in said instrument to pay Roder a reasonable sum for his professional services rendered to and money loaned the plaintiff, such payment to be out of any moneys that she might recover on such assignment. This assignment of Roder to Mrs. Weatherby was made subject to Mr. Hayes' attorney's lien and to the claim of plaintiff's wife in her sequestration proceeding to collect her alimony and also subject to Roder's agreement to pay plaintiff forty-five per cent of any money received by Roder on the original assignment.

Plaintiff's attorney Hayes, during the ten years of this litigation, culminating in the decision made by Mr. Justice BENEDICT in the plaintiff's favor for the appraisal of the good will of the partnership of Lewis & Frear, and for an accounting between plaintiff and defendants, not only never received any pay for services on behalf of the plaintiff, but, owing to plaintiff's neglect, was forced to advance a substantial amount for disbursements in the action. These disbursements are included in the sum of $523.27 costs and disbursements awarded plaintiff by the Appellate Division, payable from the assets of the firm, if any, and will be released if the proposed discontinuance is consummated.

It was after this decision in the plaintiff's favor, and while the case was pending before me, but before the taking of testimony, that the defendant's attorney produced the plaintiff's consent to discontinuance and moved at Special Term for an order permitting the discontinuance of the action without costs.

It is quite evident from the testimony taken before me that the granting of that motion will, in view of the plaintiff's financial condition, deprive his attorney, Mr. Hayes, not only of any compensation for his ten years' services in this litigation, but of any reimbursement for the expenditures that he has advanced on behalf of the plaintiff in this action.

The evidence not only established the fact of plaintiff's financial irresponsibility, but it also established the fact that he has been a confirmed dipsomaniac, a person described in his own signed agreement of assignment to Roder of " indiscretions and loose personal habits," and while it did not show him to have been insane or of complete mental irresponsibility, it did conclusively establish that he is a person of such mental aberrations due to loose personal habits as to warrant great hesitancy on the court's part in giving effect to a consent of discontinuance under the circumstances of this case, in the absence of any evidence or explanation tending to show the good faith of the consent, and when the consent is of no apparent benefit to the plaintiff's interest and will only operate to defraud his attorney of compensation and reimbursement for advances and also the plaintiff's *bona fide* assignees of any return on their assignments.

There is nothing in the record to show whether plaintiff received or was promised any compensation in return for his signature to the consent to relinquish his action. Mr. Roder testified that plaintiff told him " that he would discontinue the suit for the mere satisfaction that Mr. Hayes wouldn't get anything out of it; " that plaintiff said he " was going to get square with Hayes; " that he was going to try and settle it so that Mr. Hayes " wouldn't

get anything out of it; " that he was tired with delays that had been caused in the matter and blamed Mr. Hayes for such delays and was going to get square with Mr. Hayes and settle the suit any way he could. There is no contradiction of that testimony and the record shows that the feeling alleged by plaintiff towards his attorney was unwarranted. Roder also testified that at other times plaintiff said he expected to get $5,000 if he signed a consent to a discontinuance of the action when the action was dismissed and asked Roder if he would take $2,000 or $2,500 for his assigned interest, to which Roder replied that when the plaintiff received any money he could come in and talk business.

When Roder learned definitely from plaintiff that plaintiff had executed the consent he protested to the plaintiff that such action was a fraud of his (Roder's) rights and requested plaintiff to write a letter to defendant Lewis and his attorney withdrawing the consent. It was at this time that plaintiff told Roder that he had executed the consent for the purpose of depriving Hayes of his compensation. Roder testified that plaintiff wrote and signed a letter to defendant Lewis withdrawing the consent and promised to mail it and that plaintiff told him the next day that he had mailed it.

Mrs. Weatherby testified that plaintiff told her he was afraid to withdraw his consent to discontinue. He first denied to her that he had executed the consent, then admitted its execution, stating he had subsequently mailed a letter to revoke it, but that he would have to let it stand.

During upwards of six weeks after the date of execution of this consent of discontinuance it appears from the testimony that plaintiff consulted and worked with his attorney Hayes in preparing for the trial before me. One day, however, Hayes testified he received a telephone call from his client, who talked incoherently as though drunk, and said he did not know whether he would go on with the case or not. Hayes told him to see him at his office, but plaintiff never came there and Hayes has not seen him since. Thereafter Hayes telephoned defendant and defendant's lawyer and was informed that the lawyer had the plaintiff's consent to discontinuance. Neither the defendant nor his attorney would explain how the consent had been obtained.

It seems to me that there can be no question on this record but that the consent to discontinue was delivered by the plaintiff and accepted by the defendant Lewis in fraud of the rights of the plaintiff's attorney and of the rights of the plaintiff's assignees. Whether executed by the plaintiff for the purpose expressed in his undenied admission to Roder of preventing his attorney receiving

compensation, or in consideration of some undisclosed amount paid or promised, the result of the consent, if permitted by the court to become effective, will be to deprive the plaintiff's attorney of his costs and compensation and to prevent the plaintiff's assignees from realizing on the assignment. No explanation consistent with good faith has been vouchsafed by the defendant Lewis or his attorney for the secret retention until after the protest made by plaintiff's attorney to the defendant Lewis and his attorney.

Under the circumstances, I am of opinion that the discontinuance should not be sanctioned by the court.

It is, of course, well settled, as urged by counsel for defendants, that as a general rule a party who has commenced an action may discontinue as of right and that his reasons for such discontinuance are not ordinarily of concern to the court. (*Andrewes* v. *Haas*, 214 N. Y. 255, 258; *Matter of Butler*, 101 id. 307; *Valentine* v. *Valentine*, 134 App. Div. 664.)

The right to discontinue is, however, not absolute. It is necessary to obtain the consent and order of the court permitting the discontinuance and the court has control over litigations on its calendar sufficient to prevent the consummation of any scheme that under guise of settlement will operate to cheat one of its officers out of his compensation for faithful service. Under such circumstances it has been said the court " may properly withhold its aid from those who seek by furtive means to perpetrate a wrong under the cover of a compromise." (*National Exhibition Co.* v. *Crane*, 167 N. Y. 505, 509.)

Our courts have invariably refused to sanction dishonest efforts by clients to settle or discontinue litigations for the purpose of defrauding attorneys of their costs or compensation, and have frequently not only denied permission to discontinue based on such settlements, but have permitted the attorney upon a showing of proper facts to continue the litigation for the collection of costs and compensation. This the courts have permitted not on the principle of a lien, because prior to statute the attorney had no lien before judgment; nor upon the theory that his services had produced for the client the money paid in settlement because occasionally, as here, it could not be shown that any money had been paid or promised. The courts in the exercise of inherent power over pending litigations and the parties thereto invented this method of circumventing attempts to cheat or defraud the attorneys who were their officers and under their control (*Coughlin* v. *N. Y. C. & H. R. R. R. Co.*, 71 N. Y. 443), and the right to refuse the discontinuance and to permit the attorney to continue the litigation was established at least as early as the time of Lord MANSFIELD

and has continued unimpaired to our own day. (*Coughlin* v. *N. Y. C. & H. R. R. R. Co.*, 71 N. Y. 443, 447, 448; *National Exhibition Co.* v. *Crane*, 167 id. 508; *Pilkington* v. *Brooklyn Heights R. R. Co.*, 49 App. Div. 22; *Rochfort* v. *Metropolitan Street R. Co.*, 50 id. 261; *Matter of Evans*, 58 id. 502, 505; *Randall* v. *Van Wagenen*, 115 N. Y. 527, 532; *Astrand* v. *Brooklyn Heights R. R. Co.*, 24 Misc. Rep. 92; affd., 34 App. Div. 624; *Hart* v. *Mayor, etc.*, 69 Hun, 237; affd., 139 N. Y. 610.)

Defendant's counsel urges that since the statute of 1899 (Laws of 1899, chap. 61, amdg. Code Civ. Proc. § 66) the provisions of former section 66 of the Code of Civil Procedure, now section 475 of the Judiciary Law, or a suit in equity to foreclose the attorney's lien, are the exclusive remedies open to an attorney whose client seeks to defraud him by dishonest settlement or discontinuance. I cannot agree with the view that the increase of the attorney's remedies by statute has deprived the court of its inherent power in a proper case of affording the attorney the relief of continuing the original litigation. I am cited to no authority so holding and that such is not the law would seem to follow from the fact that such relief has been permitted by the courts since the statutory enactment. (See *Rochfort* v. *Metropolitan Street R. Co.*, *supra*.)

It is true that in *Fischer-Hansen* v. *Brooklyn Heights R. R. Co.* (173 N. Y. 492) the court said that the prosecution of the original action to judgment by the attorney in his own behalf was clumsy and illogical because it authorized the trial of a dead lawsuit in the interest of one who never owned the claim upon which it was founded; and that in *Smith* v. *Acker Process Co.* (102 App. Div. 170) the Fourth Department of the Appellate Division expressed the view that since the *Fischer-Hansen* case the court would not favor the continuance of the original action for the benefit of the attorney.

Neither of those cases, however, nor any cited by the learned counsel for the defendants, is authority for the doctrine that the courts have no longer the power upon proper facts to permit the attorney to continue the original action. On the contrary, the court in the *Fischer-Hansen* case expressly stated that the statutory remedy was cumulative and not exclusive (See, also, *Matter of Atterbury*, 222 N. Y. 355, 360) and that the attorney's right to continue the litigation " may still be resorted to." (P. 499.) In *Smith* v. *Acker Process Co.* (*supra*) the existence of three distinct remedies was expressly recognized, viz.: (1) The continuance of the original action to judgment by the attorney; (2) a proceeding under section 66 of the Code of Civil Procedure, now section 475

of the Judiciary Law, and (3) a suit in equity to foreclose the lien, although the court did express the view that since the *Fischer-Hansen* case it would " rarely, if ever," permit the continuance of the original action for the attorney.

The facts and circumstances in the case at bar would seem to constitute an instance where the court might properly permit the continuance of the action. The client is insolvent and it has not been shown that any sum was paid or promised in consideration of the consent to discontinue, which consent, according to the undenied admissions of the client, was given for the sole purpose of defrauding the attorney. It surely is not obligatory on the court to remit its officers to a futile action on a *quantum meruit* against the insolvent client or to a vain foreclosure of a lien that has attached on nothing of value.

It would seem also that the court in considering the propriety of permitting the proposed discontinuance might consider the effect upon the rights of those not parties to the record who will be defrauded if the discontinuance is permitted.

In *Levey* v. *Levey* (88 Misc. Rep. 315) Mr. Justice BENEDICT intimates that the court may refuse to sanction a discontinuance " in exceptional cases where substantial rights of others have accrued and injustice will be done to them by permitting the discontinuance " (p. 318), citing a note to *Beadleston* v. *Alley* (4 Silv. Sup. Ct. 595, 603), where the case of *Dryer* v. *Shevalier* (59 Hun, 620) is cited to the effect that " the court will set aside a settlement and discontinuance of an action to prevent the perpetration of a manifest fraud upon one not a party of record."

The order of reference merely directs that I take such testimony as may be offered by the parties on the question whether the consent to discontinuance was given by the plaintiff and accepted by the defendant in fraud of the rights of the plaintiff's lawyer, J. Nobel Hayes, and of others claiming an interest in the plaintiff's cause of action.

Many other matters have been argued by respective counsel in the voluminous briefs submitted to me and have been covered in proposed findings submitted by Mr. Hayes.

I deemed my power under the order of reference, however, limited to the precise terms of the order of reference and have accordingly submitted my report herewith only passing upon the submitted question and only finding that the said consent was given by the plaintiff and accepted by the defendant in fraud of the rights of plaintiff's attorney and of the assignees of part of plaintiff's cause of action and will operate detrimentally to the collection of plaintiff's wife's judgment for alimony.

The effect of such findings, if sustained by the court, as well as the other questions argued by counsel, are for determination of the Special Term exclusively. (See *Woodward* v. *Musgrave*, 14 App. Div. 291.)