CITIZEN'S BANK OF WHITE PLAINS, N. Y., Appellant, *v.* WOODSON R. OGLESBY et al., Defendants, NEAL R. ANDREWS et al., Appellants, and SAMUEL SCHACTER, as Receiver of D. W. GRIFFITH, INCORPORATED, Intervener, Appellant; ORVILLE C. SANBORN, Respondent.

Second Department, December 3, 1945.

*Ira M. Belfer* for plaintiff-appellant.

*George F. Reid* for Neal R. Andrews and Satan's Toe, Inc., defendants-appellants.

*Milton Pollack* and *Ludwig Mandel* for intervener-defendant and appellant.

*Orville C. Sanborn,* respondent in person.

CLOSE, P. J. The factual background in this case is rather complex and confused and, I am sure, is *sui generis* in its nature. Consequently, only such facts as are necessary to pose the question involved will be stated.

The plaintiff brought an action in the Supreme Court, Westchester County, seeking a judgment declaring that a certain judgment recorded in the name of defendant Jay W. Cole was in truth and in fact owned by defendant Oglesby, who, in turn, was a judgment debtor of the plaintiff. The defendant David Wark Griffith intervened in that action, appearing by the respondent herein, and in his answer claimed that he was the owner of the judgment recorded in the name of Cole. Cole also appeared and answered. The respondent herein was subsequently substituted and continued in the action as attorney for Cole as well as Griffith. In that action, on plaintiff's application, an order was made, in effect impounding the judgment and restraining its transfer or collection.

It appears that before the plaintiff began its litigation, a receiver in equity had been appointed in the Federal court to conserve and liquidate the assets of a corporation known as D. W. Griffith, Incorporated. The receiver brought a proceeding in the Federal court to set aside a certain judicial sale made in 1937. Both Oglesby and Griffith were concerned therein. In connection with that proceeding, the receiver secured an order in the Federal court restraining all parties from paying, collecting or transferring the judgment. In 1945 a settlement was arranged between the principals in the proceeding brought by the Federal receiver and the suit brought by plaintiff, pursuant to the terms of which the Cole judgment was to be assigned to the Federal receiver and the action brought by plaintiff was to be discontinued.

In the meantime Griffith and Cole notified the respondent that his services were terminated, whereupon the respondent brought a summary proceeding to have the value of his services and the amount of his disbursements fixed by the court. No one appeared in opposition and the court fixed the value of his services at $1,500 and the amount of his disbursements at $201.06, a total of $1,701.06.

When the plaintiff sought by motion to discontinue the action brought by it, the respondent opposed the motion. The motion was referred to an official referee to hear and determine. After such hearing the motion to discontinue was granted on condition that the Federal receiver, who was to receive the assignment of the Cole judgment, pay to the respondent the amount

of his fees as fixed. The order also granted the receiver the right to intervene so that he might appeal from the order. This he has done and asks that the order be reversed. The other appellants seek the same relief.

The remedy which the respondent has thus far successfully pursued is a rather interesting development of the efforts put forth by courts and legislatures to thwart clients in their efforts unjustly to deprive attorneys of their just compensation.

The original estate of the legal fraternity in England, at least so far as counselors were concerned, was so elevated that they possessed no right to demand compensation for their services. '' A counsel can maintain no action for his fees; which are given, not as *locatio vel conductio,* but as *quiddam* honorarium; not as salary or hire, but as a mere gratuity, which a counsellor cannot demand without doing wrong to his reputation * * *.'' (Chase's Blackstone [3d ed.], p. 630.) In that respect the legal fraternity was classified with the physicians, concerning whom Lord KENYON said: '' It has always been understood in this country that the fees of a physician are honorary, and not demandable of right.'' (*Chorley* v. *Bolcot,* 4 T. R. 317, 318.) However, we have it on the word of the learned Senator VERPLANCK in *Adams* v. *Stevens & Cagger* (26 Wend. 451, 465) that north of the River Tweed no such custom ever existed, the thrifty inhabitants of those moors and highlands having by statute provided that '' honoraries may be pursued ''.

The exact question involved in *Adams* v. *Stevens & Cagger* (*supra*) was whether counsel, who had been engaged to argue two cases in the Court of Errors, could recover the amount of compensation agreed upon for his services or whether he was limited by the terms of the '' fee-bill '', so called (2 Rev. Stat. of N. Y. [2d ed.], part III, ch. X, tit. III), to a fee of $3.75 in each case. The court, in separate opinions written by the learned Chancellor WALWORTH, Senator LEE and Senator VER-PLANCK, reached the unanimous conclusion that the doctrine that counsel fees are merely an honorarium dependent upon the client's generosity was '' not consistent with our utilitarian policy and practical notions '' (p. 461), and affirmed a judgment in favor of plaintiffs. The court, however, was careful to limit the right of recovery to a cause of action based upon an express contract and expressed no opinion as to whether an action on an implied contract would lie.

Before the Code of Procedure was adopted in 1848, an attorney had a lien upon the judgment for his services, but the

legal measure of those services was the taxable costs, and so it always happened that the extent of the attorney's lien was equal to the costs recovered in the action. (*Rooney* v. *Second Avenue Railroad Co.,* 18 N. Y. 368.) In the Code of Procedure all restrictions on the right of a party to agree with an attorney for his compensation were repealed and the measure of an attorney's compensation was left to the agreement, express or implied, of the parties. (L. 1848, ch. 379, § 258.) But the attorney still had no lien for the full agreed amount of his services. At most he had a lien for his costs on the judgment that had been recovered. (*Coughlin* v. *N. Y. C. & H. R. R. R. Co.,* 71 N. Y. 443, 449.) A lien for the attorney's services was first enforced because of the enactment of section 303 of the Code of Procedure in 1849. (L. 1849, ch. 438.) Thereafter he was allowed a lien after judgment for any compensation that his client had agreed to pay him. (*Wright* v. *Wright,* 70 N. Y. 98.) In 1879, however, because of the decision in the *Coughlin* case (*supra*) that the attorney's lien only accrued after judgment, section 66 of the Code of Civil Procedure was amended to give the attorney a lien on the cause of action before judgment. (L. 1879, ch. 542.) In 1899 the section was further amended to provide a remedy to determine and enforce the lien on the petition of either attorney or client. (L. 1899, ch. 61.) In this form it has been carried to sections 474 and 475 of the Judiciary Law, enacted originally in 1909. (L. 1909, ch. 35.)

At common law an attorney had two kinds of liens: (1) a retaining lien, which the attorney had on all papers in his possession until his claim for services was discharged; (2) a charging lien, which was a lien on a specific fund or judgment recovered through the efforts of the attorney for his compensation in that individual action or proceeding. (*Goodrich* v. *McDonald,* 112 N. Y. 157; *Robinson* v. *Rogers,* 237 N. Y. 467.) While both kinds of liens were of common-law origin, the charging lien has not only been defined but enlarged by the statute, which is now section 475 of the Judiciary Law.

The remedies of an attorney to secure compensation from his client thus far considered, therefore, are (1) suit to recover for his services; (2) the retaining lien; (3) the charging lien; (4) ascertainment and foreclosure of the lien in a separate equitable suit; (5) ascertainment and fixation of the lien in the action. All of these are not exclusive but cumulative remedies. (*Fischer-Hansen* v. *Bklyn. Heights R. R. Co.,* 173 N. Y. 492.)

The first two remedies would be of no efficacy to the respondent here. The other three remedies are not available to him because the answer does not contain a counterclaim.

There is another remedy that an attorney has which has survived since the common law, and has been known since the time of Lord MANSFIELD. It is impossible to ascertain precisely when this practice commenced, nor how it originated, nor upon what principle it was based. " It was based upon no principle. It was a mere arbitrary exercise of power by the courts; not arbitrary in the sense that it was unjust or improper, but in the sense that it was not based upon any right or principle recognized in other cases." (*Coughlin* v. *N. Y. C. & H. R. R. R. Co.*, 71 N. Y. 447, 448 *supra*.) This was the practice of courts to intervene to protect attorneys against settlements. made to cheat them out of their costs. If an attorney had commenced an action and his client settled it with the opposite party before judgment, collusively, to deprive him of his costs, the court permitted the attorney to go on with the suit for the purpose of collecting his costs. (*Coughlin* v. *N. Y. C. & H. R. R. R. Co.*, *supra*.) The attorneys' fees were fixed and definite sums, easily determined by taxation, and this power was exercised to secure them for their fees. Since before 1879 there was no lien until after judgment, the parties could settle before judgment without the consent of the attorney and, if the settlement was bona fide, the attorney was remitted to the remedy against his client for compensation. But where such settlement was made for the purpose of defrauding an attorney of his costs, the court intervened to protect the attorney by permitting him to proceed with the suit and, if he was able to establish a right to recover on the cause of action as it originally stood, to permit such recovery in the action to the extent of his costs, and the court would set aside an order of discontinuance if it stood in the way. But the attorney had no right to enforce by means of an independent and original suit the equitable right of the attorney sought to be defeated by the alleged collusive settlement. (*Randall* v. *Van Wagenen,* 115 N. Y. 527.) The relief was granted when to give full effect to the discontinuance would operate as a fraud on the attorney, or at least to his prejudice, by depriving him of his costs or turning him over to an irresponsible client. (*Poole* v. *Belcha,* 131 N. Y. 200, 204–205.) A client was not bound to continue the litigation for the benefit of his attorneys when he judged it prudent to stop, provided he was able and willing to satisfy his attorney's just claims. (*Lee* v. *V. O. Co.,* 126 N. Y. 579,

587.) The claims of the attorney which the client must be able to satisfy if he would discontinue are not limited to costs merely but to those to which the attorney is entitled either by. the agreement of the parties (*Lee* v. *V. O. Co., supra*) or the reasonable value of his services. So it has been·held by this court. (*Frear* v. *Lewis,* 201 App. Div. 660.) In connection with the denial of the discontinuance of a suit for the benefit of the. attorney so that he could collect his costs, the Court of Appeals has said: " This form of relief is clumsy and illogical, because it authorizes the trial of a dead lawsuit in the interest of one who never owned the claim upon which it was founded. It was a device of the courts, not of the Legislature, and sprang from the necessity of providing some remedy against fraudulent settlements." (*Fischer-Hansen* v. *Bklyn. Heights R. R. Co.,* 173 N. Y. *supra,* 499.) But it may still be resorted to in such cases.

In the usual case it is in behalf of the plaintiff's attorney that a suit is permitted to be continued. But the remedy of denying an order of discontinuance has been extended even for the benefit of a defendant's attorney where the answer did not contain a counterclaim. So it has been held that where defendant appeared by attorney in an action and then the parties stipulated that the action might be discontinued without costs, without the knowledge or consent of defendant's attorney and for the purpose of depriving him of his costs, the court had discretionary power to impose the payment of costs to defendant's attorney by plaintiff as a condition to the granting of an order discontinuing the action on the application of the plaintiff. (*Nat. Exhibition Co.* v. *Crane,* 167 N. Y. 505.)

Respondent presently has a determination that his services to defendants Griffith and Cole are worth over $1,700. If the action is permitted to continue, its determination may result in bringing within this jurisdiction an asset belonging to Griffith which respondent can attach to satisfy his claim. Defendant Griffith is a nonresident and, according to respondent's contention, this judgment is his only known asset and he is otherwise financially irresponsible. The motion to discontinue could, therefore, properly be granted on terms or denied.

The court in which an action is pending may impose terms beyond taxable costs as a condition of the discontinuance of the action. (*Matter of Waverly Water Works Co ,* 85 N. Y. 479, 481.) But the terms must be imposed on the party moving for the discontinuance and not on one not even a party to the action. Here plaintiff moved for the discontinuance and the

conditions were that the Federal receiver should pay respondent's fees, the theory being that the receiver is the one who will benefit from the judgment. That is not a direction that the receiver pay and it may be that, before the receiver can pay, he will have to obtain permission from the Federal court. But it was improper to impose as terms a condition that someone other than the moving party pay respondent's fee, and it was further improper because the receiver was not a party to the action and was seeking no relief.

The order should be modified on the law and the facts by striking out the first ordering paragraph and substituting in place thereof a provision that the motion of plaintiff to discontinue and for other relief be denied. As so modified, the order insofar as appealed from should be affirmed, without costs.

HAGARTY, CARSWELL, JOHNSTON and LEWIS, JJ., concur.

Order modified on the law and the facts by striking out the first ordering paragraph and substituting in its place a provision that the motion of plaintiff to discontinue and for other relief be denied. As so modified, the order insofar as appealed from is affirmed, without costs.