COUNTY OF WESTCHESTER, Appellant, v WELTON BECKET ASSOCIATES et al., Appellants, et al., Defendants. (And Third and Fourth-Party Actions.) (Action No. 1.)

J. R. STEVENSON CORP., Respondent, v COUNTY OF WESTCHESTER, Appellant, et al., Defendants. (And Third, Fourth, Fifth and Sixth-Party Actions.) (Action No. 2.)

MARTIN MECHANICAL CORPORATION, Respondent, v COUNTY OF WESTCHESTER, Appellant, et al., Defendant. (And Third and Fourth-Party Actions.) (Action No. 3.)

LUNA INDUSTRIES, INC. (LUNA ELECTRIC COMPANY DIVISION), Respondent, v COUNTY OF WESTCHESTER, Appellant, et al., Defendant. (And Third and Fourth-Party Actions.) (Action No. 4.)

Second Department, May 29, 1984

**APPEARANCES OF COUNSEL**

*Carter, Ledyard & Milburn* (*Robert N. Fass* of counsel), for Welton Becket Associates and others, appellants.

*Henry J. Logan, County Attorney* (*Carter, Ledyard & Milburn* of counsel), for County of Westchester, appellant. (One brief filed.)

*Max E. Greenberg, Cantor & Reiss* (*Julius L. Schapira, David A. Trager* and *Kalvin Kamien* of counsel), for J. R. Stevenson Corporation and others, respondents.

*Ross & Cohen* (*Lawrence E. Laykam* and *Ira M. Schulman* of counsel), for Luna Industries, Inc., respondent.

*Gottesman, Wolgel, Smith & Secunda, P. C.* (*Harold H. Wolgel* and *Michael H. Goldstein* of counsel), for Home Indemnity Company, respondent.

*Quirk & Bakalor, P. C.* (*Stephen K. Blunda* of counsel), for E. M. Fitzsimons & Associates, Inc., and others, respondents.

### OPINION OF THE COURT

THOMPSON, J.

In this complex litigation arising out of the construction of the Westchester County Courthouse in White Plains, New York, this court must address three separate issues. Subdivision (b) of section 15-108 of the General Obligations Law provides that a release given in good faith by an injured person to one wrongdoer relieves that wrongdoer from liability to any other person for contribution as provided for in CPLR article 14. We must decide in this case if nonsettling parties seeking contribution under CPLR article 14 from settling parties have sufficiently alleged causes of action for indemnification against the latter so as to allow the nonsettling parties to keep the settling parties in the litigation. We must also decide if allowing a discontinuance with prejudice of the actions among the settling parties and a dismissal of all claims among them will unfairly prejudice or impair the rights of other entities which will remain parties to the litigation. Finally, we must address the question of whether a plaintiff seeking to assert a fraud claim against certain settling parties has sufficiently alleged a cause of action against those parties in light of the absence of a direct relationship between them.

### THE PARTIES

In 1968, the County of Westchester entered into a contract with Welton Becket F.A.I.A., to design a new court-

house. This contract was subsequently assigned to and assumed by Welton Becket Associates and Welton Becket & Associates (hereinafter collectively Becket). Becket retained Cosentini Associates and Wayman C. Wing as consulting engineers, and Cosentini Associates retained Eitingon & Schlossberg Associates as its consulting engineer.

In 1970, contracts were awarded by the county to three prime contractors. J. R. Stevenson Corp. became the general contractor, Luna Industries, Inc., became the electrical contractor and Martin Mechanical Corporation became the mechanical contractor. J. R. Stevenson Corp. retained Belt Painting Corp., Cafasso Lathing & Plastering Co., Inc., and the joint venture of Giamboi Bros., Inc., and E. M. Fitzsimons & Associates, Inc., as subcontractors. For purposes of these appeals the four distinct groups involved in the litigation shall hereinafter be referred to as follows:

1. The County of Westchester      (the county)

2. Welton Becket  
   Welton Becket Associates      (Becket)  
   Welton Becket & Associates  
   MacDonald Becket      (MacDonald)  
   Wayman Wing      (Wing)      (the design professionals)  
   Cosentini Associates      (Cosentini)  
   Eitingon & Schlossberg Associates      (Eitingon)

3. J. R. Stevenson Corp.      (Stevenson)  
   Luna Industries, Inc.      (Luna)      (the contractors)  
   Martin Mechanical Corporation      (Martin)

4. Belt Painting Corp.      (Belt)  
   Cafasso Lathing & Plastering Co. Inc.      (Cafasso)  
   Giamboi Bros. Inc.      (Giamboi)      (the subcontractors)  
   E. M. Fitzsimons & Associates, Inc.      (Fitzsimons)  
   The joint venture of Giamboi Bros. Inc.  
   and E. M. Fitzsimons & Associates, Inc.      (the joint venturers)

### THE LITIGATION

On April 29, 1970 the contractors were advised to proceed with the construction, and although they were supposed to complete their work within 975 days, it has been alleged that the courthouse was not ready for full occupancy until April 29, 1975. Problems with regard to defective workmanship also arose. As a result, four separate lawsuits ensued. In three of those actions the contractors sued the county to recover damages, *inter alia,* for delay caused by the county and for the value of extra work performed. The county counterclaimed against the contractors and their sureties to recover damages based on the

delay in completing the courthouse and for defective workmanship. In each of those three actions the county also brought a third-party action against certain of the design professionals and others for contribution and indemnification. The design professionals asserted cross claims among themselves. Fourth-party actions were started, and in action No. 2 Stevenson and its sureties initiated fifth and sixth-party actions for contribution and indemnification against, *inter alia,* the subcontractors and Home Indemnity Company (Home), which had bonded two of the contractors. Certain subcontractors and Home in turn asserted cross claims against certain of the design professionals and others for contribution and indemnification.

In action No. 1, the county sued the design professionals (except Eitingon, which was subsequently impleaded by Cosentini) for negligence and breach of contract based on design defects which had existed. The design professionals asserted cross claims among themselves for contribution and indemnification, and also impleaded certain of the contractors and subcontractors for contribution and indemnification.[1]

---

**1.** These actions are not described in their entirety, but only insofar as it may bear upon the instant appeals. The following diagram may help to clarify the nature of the existing litigation. The diagram is not meant to fully set forth the exact claims against each individual and entity involved in this litigation. Its purpose is simply to clarify the nature of the litigation insofar as it concerns these appeals:

Action No. 1.

County v design professionals for negligence and breach of contract.

Design professionals cross-claim among themselves.

Design professionals bring third and fourth-party actions v certain contractors and subcontractors for indemnification and contribution.

Actions Nos. 2, 3 and 4.

Contractors v county for extra work, delay and contract retainage.

County 1) counterclaims v contractors for delay and defective workmanship;

2) *brings third-party actions v design professionals for contribution and indemnification.*

Design professionals cross-claim among themselves.

Stevenson and its sureties bring fifth and sixth-party actions in action No. 2 v subcontractors and their sureties for contribution and indemnification.

Subcontractors *et al.* cross-claim v design professionals for contribution and indemnification.

THE MOTIONS TO DISCONTINUE
AND TO AMEND PLEADINGS

In December, 1982 the county reached a settlement with the design professionals in all the actions. Stipulations of discontinuance and releases were executed. The county and the design professionals then sought an order directing entry of judgment dismissing action No. 1 against the design professionals. They also sought an order directing entry of judgment dismissing all claims, including cross claims, counterclaims, and third and fourth-party claims, which had been brought against the design professionals in actions Nos. 2, 3 and 4. The design professionals also sought summary judgment dismissing the claims brought against them for contribution and indemnification by the fifth and sixth-party defendants (the subcontractors and Home). The design professionals believed they were entitled to remove themselves from the litigation by reason of section 15-108 of the General Obligations Law which provides, in pertinent part:

"§ 15-108. Release or covenant not to sue

"(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

"(b) Release of tortfeasor. *A release given in good faith by the injured person to one tortfeasor* as provided in subdivision (a) *relieves him from liability to any other person for contribution* as provided in article fourteen of the civil practice law and rules" (emphasis supplied).

The design professionals reasoned that having settled with the injured party and being immune from contribution

claims by the contractors and subcontractors pursuant to section 15-108 of the General Obligations Law, they were entitled to remove themselves from the litigation as parties. They further argued that no cause of action for indemnity had been stated against them.

In opposition to the motion, Stevenson, Home, and several subcontractors argued that the nature of their claims against the design professionals was for indemnification as well as contribution, and section 15-108 therefore did not serve as an adequate basis for letting the design professionals out of the action. Reliance was placed, *inter alia,* upon a response by the county to a Stevenson interrogatory wherein the county allegedly "admitted" that the design professionals were 100% responsible for the damages sustained by the county and sought to be recovered by it from Stevenson. Stevenson, which had not previously included a claim against the design professionals for indemnity in its pleadings, sought leave to amend its pleadings to allege such a claim.[2] It was also argued that letting the design professionals out of the actions might otherwise prejudice the rights of the remaining parties in light of the extensive discovery which had already taken place among the parties. It would also be unfair to have the court lose its jurisdiction with regard to the disputes between the design professionals and all other parties (except the county) because the settlement agreements between the county and the design professionals specifically provided for the court to retain jurisdiction to resolve any disputes arising between the county and the design professionals under the terms of the settlement agreements.

In response to the opposition to their motion and in opposition to Stevenson's cross motion to amend its pleadings, the design professionals reiterated their argument that the claims against them were purely for contribution, and there was no basis for asserting indemnification claims.

Luna cross-moved, *inter alia,* for leave to amend its complaint in action No. 4 so that it could assert claims for fraud and indemnification against Becket. Luna's proposed fraud claim was premised on the assumption that Becket,

---

**2.** Stevenson did not seek to assert an indemnity claim against Eitingon.

who prepared the specifications and instructions to bidders for the county contract that Luna ultimately entered into, had an obligation to make certain that the county revealed to Luna and all other prospective bidders certain potential building problems that Becket had brought to the county's attention. Luna thus entered a bid, and eventually signed a contract with the county, without the knowledge that the Becket defendants had advised the county of potential building problems involving water conditions, underground lines, and an electric transformer vault. Luna claimed it first learned of this fraud in failing to disclose the potential problems during a 1981 deposition of a Becket employee. In opposition, the Becket defendants argued that no cause of action was stated because they had no duty to Luna to make certain the county revealed the potential building problems that the county was aware of. The Becket defendants further argued that the fact that they prepared contract documents, including drawings, specifications, and instructions to bidders, and that Luna entered into a contract with the county based upon those documents, did not create a duty running from Becket to Luna. Becket's relationship was solely with the county. Finally, it was argued that the claim was barred by the Statute of Limitations because the building problems had been encountered no later than 1973. Thus, whether a two-year or six-year Statute of Limitations was used (to be discussed, *infra*), the fraud claim was allegedly time barred.

### SPECIAL TERM'S DECISIONS

By order dated April 22, 1983, Special Term decided the Stevenson motion to amend its pleading to assert a cause of action for indemnity, and the design professionals' request to be let out of the action, as follows:

"The statute [General Obligations Law, § 15-108, subd (a)] relieves a joint tortfeasor, who has settled out of a lawsuit, from any future liability for contribution, but not indemnity (McLaughlin, Practice Commentary, McKinney's Cons. Laws of N. Y., Book 23A, General Obligations Law, § 15-108; *McDermott v City of New York,* 50 NY2d 134; *Aetna Cas. & Sur. Co. v Merchants Mutual Ins. Co.,* 78 AD2d 176; *Padaffari v Wilmod Co., Inc.,* 96 Misc 2d 729).

"By letter dated May 6, 1981 the attorney for the County advised the attorneys for all other parties and the Court that the County was asserting the same claims against both Stevenson and the Design Professionals. In addition, the County, in answer to certain interrogatories, has stated that the Design Professionals are 100% responsible for the damages claimed by the County in its counterclaims against Stevenson. Such a statement is not an admission (see, Richardson on Evidence, 10th Ed. p. 187 § 207), but does, in the Court's view provide a basis for a potential claim of indemnity.

"There is a distinction to be made between contribution and indemnity. The right to contribution does not arise from contract and only ratable or proportional reimbursement is sought. However, the right to indemnity arises from a contract, express or implied, and full, not partial, reimbursement is sought (*Mauro v McCrindle,* 70 AD2d 77, 80; *McFall v Waldron,* 47 NY2d 297; *Rock v Reed-Prentice Div. of Package Mach. Co.,* 39 NY2d 34, 38-39; *McDermott v City of N.Y.,* 50 NY2d 211).

"In *Mauro v McCrindle, supra,* at 81, the Appellate Division, Second Department, stated: 'The concept of implied indemnification is founded in the dual principles that the actual or primary tort-feasor should be liable for the consequences of his acts, and that causing a secondarily liable tort-feasor to bear the burden of paying damages would result in unjust enrichment to the primary tort-feasor. However, the law of indemnification also serves to reconcile two other legal principles: liability for fault and liability without fault.'

"The fifth and sixth party defendants as well as Stevenson, based on the letter dated May 6, 1981 and the County's answer to certain interrogatories may be entitled to indemnity from the Design Professionals (*cf., City of Rochester v MacKnight, Kirmmse & French,* 75 AD2d 990).

"The request for summary judgment is granted only to the extent of dismissing the cross-claims for contribution from the Design Professionals. Sufficient facts have been alleged to permit cross-claims for indemnity from the Design Professionals.

*"Discontinuance*

"The right to discontinuance is entirely discretionary with the Court and should not be allowed where the rights of third parties will be impaired (see, *Valladares v Valladares,* 80 AD2d 244 [, affd 55 NY2d 388]; *Glenmark, Inc. v Carity,* 22 AD2d 681; *Frear v Lewis,* 201 App Div 660, 666-669; *Bessey v U.S. Shipping Board E.F. Corp.,* 204 App Div 641).

"Here, there are concededly outstanding claims for indemnity that have been asserted by E. M. Fitzsimons & Associates, Inc. and Giamboi Bros., and Home Indemnity Company against the Design Professionals. Stevenson and its sureties also seek to assert claims for indemnity, recoupment and contribution.

"Paradoxically, the County under the terms of the settlement agreement, seeks to have the Court retain jurisdiction over any dispute arising between the County and the Design Professionals as a result of the settlement and at the same time, on the application to discontinue, seeks to terminate the Court's jurisdiction with respect to the controversy existing between all other parties and the Design Professionals.

"The Court would also note that a vast amount of discovery has already been completed at considerable expense to those involved in this litigation. Certainly, the parties should not be forced to incur additional expenses through the service of subpoenas on the Design Professionals as non-parties. A discontinuance of the claims against the Design Professionals in the Stevenson, Luna and Martin actions at this time would severely prejudice the other parties in this litigation. Certainly, the mere fact that the County has settled and discontinued its claim against the Design Professionals does not entitle the Design Professionals or the County to a discontinuance of all other claims against the Design Professionals (*cf., Felice v St. Agnes Hospital,* 65 AD2d 388; *Heinsohn v Putnam Community Hospital,* 65 AD2d 767).

"The branch of the request for a discontinuance with prejudice of Action #1 is granted on consent without costs or disbursements.

"The balance of the request for a discontinuance of claims in the remaining three actions is denied."

By its order dated April 22, 1983, Special Term failed to decide Luna's cross motion, *inter alia,* for leave to amend its complaint to assert claims for indemnity and fraud against Becket. By order dated June 24, 1983, the cross motion was granted. The claim for indemnity was permitted on the same reasoning that the court had previously used to permit Stevenson to assert a claim for indemnity. Special Term reasoned with regard to the proposed fraud claim as follows:

### *"Fraud*

"To maintain an action based on fraud, it is sufficient to show that the party knowingly uttered a falsehood intending to deprive the plaintiff of a benefit and that the plaintiff was damaged. (See *Channel Master Corp. v Aluminum Limited Sales, Inc.,* 4 NY2d 403). The elements of a fraud action are representation of a material existing fact, falsity, scienter, deception and injury (24 N.Y. Jur. Fraud § 14). The facts as alleged by plaintiff embrace these elements, but whether or not there was fraud remains to be determined by the trier of the facts.

"Moreover, the duty of Welton Becket as the architect is not to be stated in terms of contract or privity (see, *Glanzer v Shepard,* 233 N Y 236; *Ultramares v Touche,* 255 N Y 175; 5 Am. Jur. 2d Architects, §§ 23 and 25; PJI 2:130, pp. 361-363; *Inman v Binghamton Housing Authority,* 3 N Y 2d 137). An architect may be held liable to third parties for an intentional tort (65 ALR 3rd 249, 261 to 263 §4(a) and the cases cited therein).

"Additionally, CPLR 203(F) provides that an action must be commenced within two years from the time the facts were discovered or from the time when facts could, with reasonable diligence, have been discovered or within the otherwise applicable Statute of Limitations, whichever is longer.

"Here, the alleged fraud arose from the fact that Welton Becket knew of the various problems but failed to disclose these problems to prospective bidders. Thereafter, Luna had no reason to believe it had been misled until 1981 when discovery was underway.

"Luna's claim of fraud is being interposed within two years of its discovery and is not time-barred."

### INDEMNITY V CONTRIBUTION

Based on their settlement with the county, the design professionals sought summary judgment dismissing the claims of the subcontractors (except Belt) and Home against them for contribution and indemnification. Stevenson and Luna, two contractors, also sought leave to serve amended pleadings asserting claims for indemnification against some or all of the design professionals. Pursuant to subdivision (b) of section 15-108 of the General Obligations Law the contractors and subcontractors are prevented from asserting contribution claims against the design professionals. The question is whether the contractors and subcontractors have any potential indemnification claims against the design professionals. If viable indemnification claims exist, section 15-108 of the General Obligations Law, which is inapplicable to such claims, does not provide a basis for immunizing the design professionals from the claims of the contractors and subcontractors (*McDermott v City of New York*, 50 NY2d 211).

At the outset we note that section 15-108, although phrased solely in terms of "tortfeasors", is applicable to any litigation in which a CPLR article 14 right of contribution arises. Subdivisions (a) and (b) of section 15-108 make specific reference to contribution claims under CPLR article 14 and must be read in conjunction with it (*McDermott v City of New York, supra,* p 219; *Riviello v Waldron,* 47 NY2d 297, 306). CPLR article 14 concerns claims against "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death" (CPLR 1401) and does not utilize the more limited "tortfeasor" phraseology. It is applicable to any situation in which two or more persons can be held liable for causing the same injury (see McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C1401:3, p 362). Accordingly, section 15-108 of the General Obligations Law is applicable to the present situation despite the fact that the claims of the county are essentially contractual in nature. We note that applying section 15-108 to cases where the injury results from two or

more separate parties breaching their contractual duties effectuates the purpose of the statute to encourage settlements and let defendants buy their peace (see *Rock v Reed-Prentice Div.,* 39 NY2d 34).

The contractors and subcontractors who sought to amend their pleadings to assert causes of action against the design professionals for indemnification or who asserted such claims in their original pleadings, failed to present evidentiary facts sufficient to raise a triable issue of fact that a potential indemnification claim existed in order to defeat the design professionals' motion for summary judgment dismissing the claims against them (*Freedman v Chemical Constr. Corp.,* 43 NY2d 260). The sufficiency and the merit of the proposed amended pleadings of Stevenson and Luna, insofar as they seek to assert indemnification claims against some or all of the design professionals, may also be considered at this point in the proceedings for the purpose of furthering the goal of judicial economy (*Sharapata v Town of Islip,* 82 AD2d 350, affd 56 NY2d 332). We conclude that the contractors and subcontractors do not set forth an adequate basis for asserting causes of action for indemnification against the design professionals, and accordingly, there are no potential indemnification claims which serve to prevent the design professionals from being dismissed from the litigation as parties.

Despite a substantial body of case law which thoroughly discusses the differences between contribution and indemnification, the two are often confused (see Prosser, Torts [4th ed], § 51, and cases cited therein). Contribution involves an apportionment of responsibility where wrongdoers are *in pari delicto.* Each of the wrongdoers owes a duty to the injured party, and it is a fact question for the jury as to the degree of responsibility each wrongdoer must bear for causing the injury (*Dole v Dow Chem. Co.,* 30 NY2d 143). A contribution situation exists even if distinct duties and different theories are used to recover against joint wrongdoers (*Crow-Crimmins-Wolff & Munier v County of Westchester,* 90 AD2d 785; *Taft v Shaffer Trucking,* 52 AD2d 255, mot to dismiss app granted 42 NY2d 974).

Indemnity, on the other hand, involves an attempt to shift the entire loss from one who is compelled to pay for a

loss, without regard to his own fault, to another person who should more properly bear responsibility for that loss because he was the actual wrongdoer. The right to indemnification may be created by express contract, but the contract is often one implied by law to prevent an unjust enrichment or an unfair result. In some instances the law imposes liability on a person who has in fact committed no actual wrong, but who is held responsible for a loss as a matter of social policy because he is in a position to spread the risk of the loss to society as a whole (*Mauro v McCrindle,* 70 AD2d 77, affd 52 NY2d 719). Thus, for example, an employer may be held liable for the wrongdoing of his employee, the owner of a vehicle may be held responsible for the tortious operation of the vehicle by another which results in injury, or an owner of property may be held liable for the wrongdoing of his contractor. Where one who has committed no actual wrong is held vicariously liable for the wrongdoing of another, he has a right to indemnification from the actual wrongdoer (see, generally, *D'Ambrosio v City of New York,* 55 NY2d 454; *McDermott v City of New York,* 50 NY2d 211, *supra; Rock v Reed-Prentice Div.,* 39 NY2d 34, *supra; Garrett v Holiday Inns,* 86 AD2d 469, mod on other grounds 58 NY2d 253, 263; *Smith v Hooker Chem. & Plastics Corp.,* 83 AD2d 199, 201; *Mauro v McCrindle, supra*).

Mere use of the term "indemnification" is insufficient to evade the bar of subdivision (b) of section 15-108 of the General Obligations Law (*Siffin v Rambuski,* 87 AD2d 979). A proper basis for the claim must be stated. If there is actual wrongdoing by the person seeking to assert an indemnification claim, that claim is not viable.

In the present situation, the contractors and subcontractors have no basis for claiming indemnification from the design professionals. Their claim is solely for contribution (*Crow-Crimmins-Wolff & Munier v County of Westchester,* 90 AD2d 785, *supra*). There is no claim by the county in this litigation that the contractors and subcontractors are responsible for any wrongs committed by the design professionals. The responsibility for making certain that a proper structure was built in a timely fashion was distributed among the design professionals, contractors, and subcon-

tractors. If the contractors and subcontractors in fact adhered to the plans and specifications provided to them by the design professionals and exercised reasonable care and skill in the performance of their work, they will not be held responsible for any damages which occurred as a result of defects in the plans and specifications (*MacKnight Flintic Stone Co. v Mayor of City of N.Y.*, 160 NY 72; *Trans Caribbean Airways v Lockheed Aircraft Serv.-Int.*, 14 AD2d 749). Rather, the claim is not that Stevenson and Luna bear vicarious responsibility based solely upon their relationships with the actual wrongdoers, but that they are actual wrongdoers. Stevenson and Luna simply have failed to establish the existence of a viable claim against the design professionals for indemnification. To the extent that *City of Rochester v MacKnight, Kirmmse & French* (75 AD2d 990), may be read as holding to the contrary, we disagree with its conclusion. We believe the case likely presents an instance where the court simply failed to exercise sufficient care in its use of the words "contribution" and "indemnity".

The fact that the county has claimed in a response to an interrogatory that the design professionals are 100% responsible for the damages claimed by the county in its counterclaim against Stevenson does not change our analysis. An injured party is free to seek a 100% recovery against any individual wrongdoer among joint wrongdoers. Furthermore, it is possible that despite a claim for contribution, only one wrongdoer will be found to exist. Despite our holding that the contractors and subcontractors possess only a claim for contribution against the design professionals, at a trial the contractors and subcontractors are still free to assert and prove that all of the damages resulted from the wrongs committed by the design professionals. "In a particular case, of course, the inquiry may result in a finding that only one of the parties was responsible for the defect; in that event, full liability should be incurred by that party alone" (*D'Ambrosio v City of New York*, 55 NY2d 454, 464; cf. *Dole v Dow Chem. Co.*, 30 NY2d 143, 153, *supra*).

In short, the design professionals are entitled to withdraw from the litigation because any claim for contribution would be barred by paragraph (b) of section 15-108 of the

General Obligations Law and there is no viable claim for indemnification against them. This is so even if the contractors and subcontractors convince the trier of facts that the problems with the construction of the courthouse were the sole responsibility of the design professionals. The design professionals have purchased their peace, and unless some countervailing consideration prevents it, they are entitled to be removed from the litigation as parties.

### DISCONTINUANCE

■ Special Term was in error when it refused to allow the county and the design professionals to discontinue the actions among themselves in the litigation initiated by the contractors against the county. As already discussed, there are no existing indemnity claims which may serve to prevent a granting of the request for discontinuances. The decision as to whether to allow a party to discontinue an action is discretionary (*Matter of Cowles*, 22 AD2d 365, affd 17 NY2d 567), but a discontinuance should be permitted in the absence of prejudice to the substantial rights of other parties or an injustice (*Ruderman v Brunn*, 65 AD2d 771).

The cases relied upon by Special Term are demonstrative of the types of prejudice or injustice necessary to deny a request for a discontinuance. Thus, in *Valladares v Valladares* (80 AD2d 244, affd 55 NY2d 388) a discontinuance was not permitted where it was sought to take advantage of the newly enacted equitable distribution statute. In *Glenmark, Inc. v Carity* (22 AD2d 681) and *Frear v Lewis* (201 App Div 660), discontinuances were sought for the purpose of limiting an attorney's right to recover for services rendered. *Heinsohn v Putnam Community Hosp.* (65 AD2d 767), *Felice v St. Agnes Hosp.* (65 AD2d 388), and *Bessey v United States Shipping Bd. Emergency Fleet Corp.* (204 App Div 641) all involved situations where there were viable outstanding indemnity claims.

The foregoing cases simply do not pertain to the instant situation. The factors relied upon by Special Term are also inadequate for purposes of compelling parties to litigate actions they do not want to participate in. The fact that the county and design professionals sought to have the court retain jurisdiction as to any disputes arising under the

terms of the settlement agreements simply has no relevance to the requested discontinuances. The fact that certain design professionals may have to be subpoenaed as witnesses now that they are no longer parties to the lawsuit also provides an inadequate reason for preventing them from enjoying the peace they believed they purchased when they settled their claims with the county (*Mielcarek v Knights,* 50 AD2d 122). Forcing the settling parties to continue with their actions as parties to the lawsuit would also entail the danger of presenting the triers of fact with a false image of what the real interests of the parties are with regard to the outcome of the litigation (*Meleo v Rochester Gas & Elec. Corp.,* 72 AD2d 83, mot for lv to app dsmd 49 NY2d 797). Accordingly, in the absence of any countervailing concerns and in furtherance of the goal of encouraging settlements, the motion for a discontinuance should have been granted.

## FRAUD

■ Luna, a contractor, sought to amend its pleading to assert a fraud claim against Becket. The Becket defendants served as the architectural consultants for the county. Luna's proposed cause of action is premised on the assumption that Becket's duty to the county to prepare documents for the county's contract with its contractors created a direct duty between Becket and Luna. Luna argues that Becket had a duty to make certain the county revealed to the bidders all of the relevant construction factors about which it had advised the county. Special Term permitted Luna to amend its pleading to assert its fraud claim against Becket. We now reverse.

To plead a cause of action for fraud, a plaintiff must allege that the defendant knowingly uttered a falsehood with the intent of depriving the plaintiff of a benefit, and that the plaintiff was deceived and damaged thereby (*Channel Master Corp. v Aluminum Ltd. Sales,* 4 NY2d 403). An affirmative misrepresentation is not always necessary. It may be sufficient to state a cause of action that there was a failure to disclose a material fact, and that this was calculated to induce a false belief (*Donovan v Aeolian Co.,* 270 NY 267), but in such a situation there must be a confidential or fiduciary relationship such as to create a

duty to disclose (*Moser v Spizzirro,* 31 AD2d 537, affd 25 NY2d 941; see *Amend v Hurley,* 293 NY 587). In the present case Becket's duty was solely to the county, and Luna has failed to allege a sufficient legal duty running from Becket to Luna so as to state a cause of action for fraud. It appears uncontroverted that Becket apprised the county of the "hidden" building problems Luna now complains of, and there is no basis for concluding Becket had a duty to make certain the county revealed this information to Luna. Although there have been situations where professionals who breached their duties to their clients have been held liable for foreseeable injury to third parties (*Ultramares Corp. v Touche,* 255 NY 170, *supra; Glanzer v Shepard,* 233 NY 236), there is no claim here that Becket failed to reveal the true construction situation to its client, the county. It is quite another matter to conclude that Becket had a further duty to potential bidders to make certain the county passed the information along. Luna, of course, may still pursue a claim for fraud against the county.

Even if a claim for fraud was stated, it would have to be dismissed because of the Statute of Limitations. The Statute of Limitations for fraud is either six years from the date of the fraud or two years from the time the fraud was discovered or with reasonable diligence could have been discovered, whichever is longer (CPLR 213, subd 8; 203, subd [f]). The construction problems complained of were discovered by Luna in 1973, and this was a sufficient basis for starting the running of the two-year Statute of Limitations. At the time the construction problems were encountered, Luna should have made inquiry as to why these problems were not revealed in the contract for which it was the successful bidder. Luna could not wait until a 1981 deposition of a Becket employee to decide that it might have a fraud cause of action. Furthermore, the alleged fraudulent act occurred prior to Luna entering into a contract with the county in 1970, and the attempt to interpose a fraud claim came more than six years after the alleged fraudulent act took place. Insofar as Luna failed to assert its fraud claim within the requisite time period, it was error on this ground as well to allow Luna to amend its pleadings to assert the fraud claim.

Accordingly, the order dated April 22, 1983 should be reversed insofar as appealed from, the branches of the motion of the design professionals which sought to (1) dismiss the cross claims of the fifth-party defendants and sixth-party defendant in action No. 1 and (2) discontinue and dismiss all claims, cross claims, and counterclaims between them and the County of Westchester in actions Nos. 2, 3 and 4, should be granted, and the cross motion of J. R. Stevenson Corp. and its sureties for leave to serve amended pleadings asserting cross claims for indemnity should be denied. The order dated June 24, 1983 should be reversed and the cross motion of Luna Industries, Inc., for leave to serve an amended pleading asserting cross claims for indemnity and fraud should be denied.

LAZER, J. P., MANGANO and BRACKEN, JJ., concur.

Order of the Supreme Court, Nassau County, dated April 22, 1983, reversed insofar as appealed from, on the law, with one bill of costs payable by respondents appearing separately and filing separate briefs, that branch of the motion of Welton Becket Associates, Welton Becket & Associates, MacDonald Becket, Wayman C. Wing, Cosentini Associates and Eitingon & Schlossberg Associates which sought to dismiss the cross claims of the fifth-party defendants and sixth-party defendant seeking indemnity from them in action No. 2 granted; that branch of said motion which sought to discontinue and dismiss all claims, cross claims, and counterclaims between the movants and the County of Westchester, with prejudice, in actions Nos. 2, 3 and 4 granted; and cross motion of J. R. Stevenson Corp. and its sureties for leave to serve amended pleadings asserting cross claims for indemnity denied.

Order of the Supreme Court, Nassau County, dated June 24, 1983, reversed, on the law, with one bill of costs payable by respondent Luna Industries, Inc., and cross motion by said respondent for leave to serve an amended pleading asserting cross claims for indemnity and fraud against Welton Becket Associates and Welton Becket & Associates denied.