SALVATORE FELICE, as Administrator of the Estate of CAROL FELICE, Deceased, Plaintiff, v ST. AGNES HOSPITAL, Respondent. JOHN ROSSI et al., Appellants.

Second Department, December 18, 1978

### APPEARANCES OF COUNSEL

*Anthony L. Schiavetti (Norman Bard* of counsel; *Sandra Krevitsky* on the brief), for appellants.

*King, Edwards & O'Connor (J. Peter Collins* of counsel), for respondent.

### OPINION OF THE COURT

TITONE, J.

This is a wrongful death action against defendant St. Agnes Hospital, and three physicians, Drs. Rossi, Istwany and Trimarchi.

On November 27, 1974, plaintiff's decedent entered defendant hospital for the purpose of giving birth to her daughter Carol Ann, who was delivered that day. The mother died the next day from an infection allegedly not previously diagnosed or treated. Defendants Rossi and Istwany were her obstetricians and defendant Trimarchi was the anaesthesiologist at time of delivery. In the instant action the plaintiff, the decedent's husband, sought damages in the sum of $500,000 for her wrongful death, and $50,000 for conscious pain and suffering.

The complaint alleges, *inter alia,* that on November 27, 1974, the defendants *undertook to and did provide hospital services* to the decedent of a negligent and inappropriate nature constituting acts of malpractice, and that each of the three doctors *was acting within the scope of his employment by the hospital.* The answer of each defendant consists of general denials and affirmative defenses. In addition the hospital interposed a cross claim against the doctors, alleging that if it is found negligent, it will be entitled to indemnification in whole or in part by the doctors for the portion of the damages caused by their negligence.

Thereafter the three doctors settled the wrongful death cause of action against them for $115,000. The settlement was approved by order of the Supreme Court, Westchester County, dated June 13, 1977. Two days later a stipulation discontinuing the action as to the doctors was executed by them and the attorneys for the plaintiff.

In early October, 1977, the hospital's motion for an order requiring the doctors to appear for an examination before trial was granted. The order of Special Term directed the "co-defendant doctors" to appear for examination before trial at the conclusion of examinations of the hospital and the plaintiff. However, despite this order the three doctors moved, on December 7, 1977, for an order to amend the caption of the action so as to delete their names as party defendants, pursuant to CPLR 305 (subd [c]). The doctors contended that pursuant to the stipulation of discontinuance they were no longer party defendants and the prior order of October 4, 1977, directing them to appear at an examination before trial as "co-defendants", was void for lack of jurisdiction.

By order entered December 28, 1977 Special Term denied the motion asserting that the hospital had a cross claim against the doctors which was still viable. The court's determination was consistent with the hospital's position that it was seeking indemnification against the three doctors, and that their status as parties under the cross claim was unaffected by the settlement between the plaintiff and the doctors under provisions of section 15-108 of the General Obligations Law. The provisions of section 15-108 relevant to this proceeding are:

"(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

"(b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.

"(c) Waiver of contribution. A tortfeasor who has obtained

his own release from liability shall not be entitled to contribution from any other person."

The doctors moved for reargument of their motion to amend the caption. In support thereof they asserted that since they settled their case with the plaintiff, they were not required to participate as party defendants in the plaintiff's action against the remaining tort-feasor. The hospital, in opposition to the motion for reargument, although admitting the "co-defendant physicians" were independent contractors, asserted that while the settlement eliminated its right to contribution from the doctors (General Obligations Law, § 15-108, subd [c]), it did not affect the hospital's cause of action for common-law indemnification from the doctors. Special Term, in denying the motion to reargue, opined that since plaintiff alleges in his complaint that the three physicians were employees of the hospital and were acting within the scope of their employment at the time they allegedly committed their acts of malpractice, liability of the hospital, if any, may well be vicarious in nature and based upon the theory of *respondeat superior,* and thus a basis for indemnification may be developed at the trial.

Twenty-three days after entry of the order denying reargument, the doctors served a notice to admit upon the hospital.* In its answer to this notice, the hospital admitted that all three were attending physicians and independent contractors, and not its employees.

In their papers in support of the motions to amend the caption of the action and for reargument the three physicians argued, *inter alia,* that the prior order of Mr. Justice SULLIVAN, dated October 4, 1977, which granted the hospital's motion to examine them as codefendants, was void for lack of in personam jurisdiction. They claimed that inasmuch as the plaintiff settled and discontinued his action against them, they were no longer parties. The thrust of the doctors' argument on appeal is that notwithstanding the allegation in the plaintiff's complaint that they were employees of the hospital, the concession by the hospital that they were independent contractors renders it impossible for the hospital to be held vicariously liable for their acts and, therefore, there can be no common-law indemnification.

We disagree, both with the argument presented at Special

---

* Although the notice to admit and the admissions with respect thereto were served subsequent to the order denying reargument, the hospital did not object to their being included in the record on appeal.

Term as to its alleged lack of jurisdiction with respect to the hospital's motion to examine the doctors as codefendants and the one presented by them on appeal on the indemnification issue.

Plaintiff's discontinuance of his claim against the three physicians did not divest Special Term of jurisdiction to entertain the hospital's motion to examine them before trial as codefendants. In most jurisdictions it has been held that a voluntary dismissal or nonsuit does not preclude a defendant's plea for affirmative relief, nor does it prevent a defendant from proceeding in the same action with his setoff, counterclaim, cross action, cross complaint, or other claim for affirmative relief. Thus a dismissal as to one of a number of defendants does not result in the dismissal of that defendant's claim for relief against the plaintiff or against a codefendant; *nor does it carry with it a dismissal of the claim interposed against such defendant by a codefendant (Amerman v State,* 111 Okla 174; 27 CJS, Dismissal & Nonsuit, § 39). Significantly, it was held in *Mackenzie v Sun Choo Choi* (47 Hawaii 298), that the court's indorsement of the word "approved" on a stipulation for discontinuance and dismissal of an action with prejudice, is not tantamount to an order dismissing the action in disregard of the rights of parties who did not sign the stipulation. Furthermore, a court may refuse to allow a discontinuance where substantial rights may have crystallized in favor of a defendant (cf. *White v National Bondholders Corp.,* 191 Misc 536, affd 273 App Div 963).

In passing, it should be noted that a perusal of all the original papers in this case reveals that in the motion by the hospital to take the oral depositions of the physicians, the latter defendants, in their attorney's affirmation in opposition and in a memorandum of law, raised essentially the same argument set forth by them in the within application to have their names deleted as defendants from the caption. Specifically, the attorney for the physicians contended that since, *inter alia,* his clients were discharged and released from all further liability resulting from the claim of the plaintiff, the application of the hospital to examine them should be denied. In support of this affirmation the physicians' attorney submitted a memorandum of law in which he argued, *inter alia,* that since under section 15-108 of the General Obligations Law, a release given in good faith by the injured party to one of the tort-feasors, relieves him from liability to any other person for

contribution under CPLR article 14, the physicians should now be free from the "reaching arms of the non-settling tort feasor and co-defendant ST. AGNES HOSPITAL". In sum, the physicians, through their attorney, took the position that they were not subject to examination before trial as party defendants. Mr. Justice SULLIVAN obviously disagreed when he ruled in his order, dated October 4, 1977, that the motion by the hospital "requiring the released co-defendant doctors to appear for an examination before trial * * * is granted and the *co-defendant doctors are directed to appear* [to] be examined at the conclusion of the moving defendant's and plaintiff's examination" (emphasis supplied).

Although the determination of Mr. Justice SULLIVAN granting the hospital's motion to examine the three doctors before trial as codefendants does not, under the doctrine of "law of the case", bind this, a reviewing court (see *Clark v New York Tel. Co.,* 52 AD2d 1030, affd 41 NY2d 1069), in our opinion the physicians should not thereafter have brought the instant motion to delete their names as party defendants under the same theory of law, before a court and Judge of co-ordinate jurisdiction. Instead they should have appealed from Mr. Justice SULLIVAN's adjudication (see *Martin v City of Cohoes,* 37 NY2d 162).

However, in deciding the appeal on the merits, as this court has decided to do, we come to the inescapable conclusion that the motion to amend the caption by deleting the names of the three physicians as codefendants was prematurely brought, and accordingly, Special Term's denial of the motion should be affirmed.

As correctly indicated by the hospital, no discovery of evidentiary facts has taken place. Therefore, since the action is still in the pleading stage, it is necessary to ascertain solely from the pleadings whether at this time a claim of indemnity against the physicians may exist in favor of the hospital. According to the plaintiff's complaint *all* of the defendants "undertook to and did provide hospital services" to the decedent "of a negligent and inappropriate nature", and each of the three defendant physicians "was acting within the scope of his employment by defendant, ST. AGNES HOSPITAL."

In its answer to the plaintiff's complaint, the hospital interposed (a) a general denial to the plaintiff's allegations that the three physicians were its employees at the time of the occurrence, and, in the alternative, (b) a cross claim against the

physicians asserting, *inter alia,* that if the plaintiff sustained damages *as alleged in the complaint,* it would be entitled to *be indemnified in whole* or in part by the codefendants for the portion of the damages caused by their negligence.

From the aforegoing it is obvious that the plaintiff has interposed a bona fide claim that the hospital may be vicariously liable for the negligence of any or all of the three physicians, and that based on such claim, insofar as it seeks indemnification, the hospital's cross claim would come into fruition should the plaintiff eventually succeed in establishing the truth of such claim. Neither the fact that the plaintiff settled his case with the three physicians nor that the hospital has denied any employer-employee relationship with the physicians and has reasserted its position in its admission that the physicians were independent contractors, precludes the plaintiff from eliciting information at an examination before trial and/or introducing evidence at the trial, that the hospital in fact exercised sufficient control over the codefendants to make it vicariously liable for their negligence (see *Mduba v Benedictine Hosp.,* 52 AD2d 450).

In a similar vein, the fact that the cross claim of the hospital against the physicians for indemnification contains allegations either inconsistent or in the alternative with those contained in the answer denying any employer-employee relationship, does not render the cross claim null and void. Separate causes of action or defenses may be stated regardless of their consistency (CPLR 3014). A defendant is permitted to set forth in his answer as many defenses and cross claims, or both, as he has and it matters not whether they are consistent or inconsistent *(Spaulding v Hotchkiss,* 62 NYS2d 151; cf. *Rosasco Creameries v Cohen,* 249 App Div 228, revd on other grounds 276 NY 274). CPLR 3019 (subd [b]) specifically provides that a cross claim may be asserted against one who is or may be liable to the cross claimant. This section makes it clear that it is proper to allege as a cross claim a cause of action whose existence depends on the outcome of the main action. The reason for the statement in the last sentence of CPLR 3019 (subd [b]), to wit, that a cross claim may be asserted against one who "is or may be liable to the cross-claimant", is to assure the availability of an indemnity cross claim as against a contention that the claim is premature since ordinarily an indemnity cause of action does not accrue until the person to be indemnified has actually lost something,

i.e., paid something *(50 New Walden v Federal Ins. Co.,* 22 AD2d 4).

With respect to the hospital's admission obtained by the three physicians pursuant to CPLR 3123, the law is settled that the purpose of the notice to admit procedure is not to obtain information in lieu of other disclosure devices, but only to eliminate from the issues matters which will not really be in dispute at the trial *(Falkowitz v Kings Highway Hosp.,* 43 AD2d 696).

At this juncture in the action it cannot be conclusively presumed that evidence will not be adduced either during an examination before trial, or at the trial, or at both, that any or all of the three physicians were not under the control and direction of the hospital at the time of the occurrence (cf. *Nai-Shun C. Yung v Mount Vernon Hosp.,* 7 AD2d 734). As both the doctors and Mr. Justice Suozzi in his dissent admit, nothing in *Dole v Dow Chem. Co.* (30 NY2d 143) abrogates the common-law right of indemnity, if such right existed prior to the *Dole* decision *(Rogers v Dorchester Assoc.,* 32 NY2d 553). Section 15-108 of the General Obligations Law, quoted herein, simply provides that a released tort-feasor is released from liability for contribution as provided in CPLR article 14 entitled "Contribution". Section 1404 of this article, entitled "Right of persons entitled to damages not affected; rights of indemnity or subrogation preserved", specifically provides (subd [b]) that "[n]othing contained in this article shall impair *any right of indemnity* or subrogation under existing law" (emphasis supplied).

It should also be noted that CPLR 3123 (subd [b]) specifically grants a party the right to ask the court, *at any time,* for permission to amend or withdraw his admission. Under the circumstances herein the hospital should have the privilege at this time of deferring any decision as to whether it wishes to withdraw or amend the subject admission at least until after pretrial depositions have been completed. In fact, such depositions should be conducted before a motion is entertained either for summary judgment (CPLR 3212), for a discontinuance (CPLR 3217), or to amend pleadings in order to delete a party from the caption (CPLR 305, subd [c]). (Cf. *Golden v Wickhardt Co.,* 33 AD2d 652; *Raymond Lee Organization v Council of Better Business Bureaus,* 74 Misc 2d 363.)

Moreover, while the hospital did respond to the notice to admit, the information sought therein, i.e., whether the three

physicians were independent contractors, was in fact a request for an admission to an ultimate or conclusory fact which can only be determined after a full and complete trial (see *Falkowitz v Kings Highway Hosp.*, 43 AD2d 696, *supra; Nader v General Motors Corp.*, 53 Misc 2d 515, 516; 3A Weinstein-Korn-Miller, NY Civ Prac, par 3123.05). Whether a person is an "employee" or an "independent contractor" is an ultimate fact to be determined from the evidence itself. It may be called a conclusion to be drawn from the contract itself, the attitude of the parties toward each other, the nature of the work *and all relevant circumstances* (see *Review Bd. of Unemployment Compensation Div. of Dept. of Treasury v Mammoth Life & Acc. Ins. Co.*, 111 Ind App 660).

In his dissent, Mr. Justice Suozzi, citing *Mduba v Benedictine Hosp.* (52 AD2d 450, 453, *supra)*, concedes that a hospital may be held vicariously liable for the negligent acts of an independent contractor-physician where the doctor holds himself out to the public in such a manner as to cause the patients to assume that he was acting on the hospital's behalf. However, he states that the facts in *Mduba* are distinguishable from those at bar since in this case the three physicians were retained by the plaintiff, while in *Mduba* the physician in question was under contract with the defendant hospital as director of the emergency room.

While such distinguishing features between *Mduba* and the case at bar are seemingly present, the fact remains that as yet no pretrial discovery proceedings have been conducted in this case to explore in depth the nature and extent of the relationship between the three physicians and the hospital. Present day hospitals, as their manner of operation demonstrates, do far more than furnish facilities for treatment *(Bing v Thunig,* 2 NY2d 656, 666). Whatever may have been the case in earlier times, today the hospital takes an increasingly active part in supplying and regulating the purely medical care the patient receives. The fact that certain doctors are not employees of a hospital does not mean such institution cannot be held liable for adverse effects of treatment or surgery approved by the doctors. Every doctor using a hospital's facilities is ordinarily required to comply with its standards and subject his work to staff consultation, review, and regulation, at pain of losing staff privileges *(Darling v Charleston Community Mem. Hosp.,* 33 Ill 2d 326, cert den 383 US 946; *Gridley v Johnson,* 476 SW2d 475 [Mo]; Ann. 14 ALR3d 873, 875, 878).

In conclusion, we submit that the eliminating of the three physicians as party defendants at this stage of the action is fraught with possible, though perhaps not probable, procedural complications. A finding, after a trial by a jury, that the hospital is vicariously liable for their negligence, sans their being party defendants, would not be binding upon them. Such an eventuality would defeat some of the essential purposes for the enactment of statutes and rules pertaining to interpleader, third-party practice, and the interposing of cross claims and counterclaims, namely to avoid multiplicity of litigation, to nurture a speedy, less expensive administration of justice and to determine the ultimate rights of all parties in one trial (*Galka v City of Albany,* 285 App Div 27; *Ritter v Mountain Camp Holding Corp.,* 252 App Div 602; *Kelly v Yannotti,* 4 NY2d 603).

Therefore, deferring consideration of any application dealing with the true relationship between the hospital and the three physicians at the time of the occurrence, at least until after pretrial depositions of all the litigants as parties to the action have been conducted, is in accordance with sound procedural practice and eminently fair to all.

Accordingly, the order entered December 28, 1977, should be affirmed. However, the appeal from the order entered February 22, 1978 must be dismissed since no appeal lies from an order denying a motion to reargue.

SUOZZI, J. (concurring in part and dissenting in part). I concur as to the dismissal of the appeal from the order denying reargument, but otherwise dissent and vote to grant the appellants' motion to amend the caption of the action by deleting their names as party defendants.

In my view, the factual context of this case and the mandate of the Court of Appeals in *Dole v Dow Chem. Co.* (30 NY2d 143) preclude any possibility of a right to full common-law indemnification in favor of the defendant hospital against the defendant doctors. Accordingly, the motion by the doctors to amend the caption of the action by deleting their names as party defendants should have been granted.

The instant action for wrongful death was brought against the defendant hospital and three doctors. The deceased was admitted to the hospital on November 27, 1974 to deliver a child. Defendants Rossi and Istwany were her obstetricians and she was also treated by defendant Trimarchi, an anaesthe-

siologist, while in the hospital. The complaint alleges, *inter alia,* that the defendant doctors were all employees of the hospital and were negligent in treating the deceased. The bill of particulars alleges, in pertinent part, that all of the individual defendants were negligent in failing to diagnose that the decedent had an infection that should have been treated promptly.

The answers consist of general denials and affirmative defenses of contributory negligence. In addition, the hospital interposed a cross claim against the doctors alleging that if it is found negligent, it will be entitled to indemnification in whole or in part by the doctors for such portion of the damages as was caused by their negligence.

Thereafter, the doctors settled the wrongful death cause of action against them for $115,000 and this settlement was approved by an order of the Supreme Court, Westchester County, dated June 13, 1977. A stipulation discontinuing the action as to the individual defendants was signed by the attorneys for plaintiff and the individual defendants on June 15, 1977.

Thereafter, the hospital moved for an order requiring the released doctors to appear for an examination before trial. The motion was granted by order dated October 4, 1977 whereby the "co-defendant doctors" were directed to appear for examinations before trial at the conclusion of the examination of the hospital and the plaintiff.

The individual doctors then moved, by notice of motion dated December 7, 1977 for an order, pursuant to CPLR 305 (subd [c]), amending the caption of the action so as to delete the individual doctors as party defendants.

In support of the motion it was alleged that pursuant to the stipulation of discontinuance, the individual doctors were no longer party defendants to the lawsuit and the prior order of October 4, 1977 was void for lack of in personam jurisdiction. The doctors argued that after amendment of the action, they could be deposed as nonparty witnesses pursuant to CPLR 3106 (subd [b]).

In opposition to the motion, the attorneys for the hospital alleged that the hospital in its cross claim was seeking indemnification against the doctors and that the doctors' status as parties with respect to that cross claim was unaffected by the settlement between the plaintiff and the doctors and the provisions of section 15-108 of the General Obligations Law.

Special Term denied the motion holding that "[w]hile it is true that plaintiff's action against movants has been settled and discontinued, nevertheless, defendant St. Agnes Hospital still has a cross claim against movants which is still viable".

The doctors then moved for reargument alleging that after settling the case with the plaintiff they were not required to participate as party defendants in the plaintiff's action against the remaining tort-feasors.

In opposition to the motion to reargue, the hospital alleged that the settlement between the doctors and the plaintiff only eliminated the hospital's right to contribution from the doctors (see General Obligations Law, § 15-108), but did not affect the hospital's cause of action for common-law indemnification from the doctors. However, at the same time the hospital admitted that "the co-defendant physicians were independent contractors".

In denying the doctors' motion to reargue, Special Term held: "The Court is still of the view that defendant St. Agnes Hospital's cross claim against movants (three physicians) for full indemnification is still viable. In this case, the defendant hospital may be entitled to full indemnity rather than contribution from these physicians since plaintiff alleges in his complaint that these three physicians were *employees* of the hospital and were acting within the scope of their employment when they allegedly committed acts of malpractice. It may well be that the liability of the hospital, if any, will be vicarious in nature and based upon the theory of *respondent [sic] superior* and that, contrary to the contention of the physicians' attorney in his reply affirmation and brief, there may be developed at the trial a basis for indemnification".

Since Special Term premised its decision on the supposition that the physicians were employees of the hospital and that the hospital's liability might well be vicarious in nature (despite the hospital's admission in its affidavit in opposition to the motion to reargue that the physicians were independent contractors), a notice to admit was served on the attorneys for the hospital on March 15, 1978. In its answer to the notice to admit, the hospital clearly acknowledged that all three physicians were attending physicians and independent contractors and not employees of the hospital.

Subdivision (a) of section 15-108 of the General Obligations Law provides that when a release is given to one of two or more persons claimed to be liable in tort for the same injury

the other tort-feasors are not released from liability unless the terms of the release so provide, but the claim of the plaintiff against the other tort-feasors is reduced by the amount stated in the release, or the amount actually paid for the release, or in the amount of the released tort-feasor's equitable share of the damages under CPLR article 14 (Contribution) "whichever is the greatest". The released tort-feasor is thereby relieved from liability to any other person for contribution under article 14 (General Obligations Law, § 15-108, subd [b]) and by the same token, he is not entitled to obtain contribution from any other person (General Obligations Law, § 15-108, subd [c]).

It must be noted that section 15-108 is applicable to all those who possess a right of contribution under CPLR article 14. In contribution, the liability is shared among wrongdoers who are *in pari delicto.* The statute has no bearing on the traditional common-law right of indemnity, e.g., the right of an employer who has been held vicariously liable for the negligence of his employee to be completely indemnified by the employee. In the latter situation, there is a shifting of the entire loss from one defendant to another.

In discussing the effects of this statute on tort-feasors, the court in *Mielcarek v Knights* (50 AD2d 122, 127) stated that a "valid concern may involve the nonsettling defendants' lack of opportunity to cross-examine the settling tort-feasor". In response to this problem, the court in *Mielcarek* (p 127) stated that "[t]his problem may be alleviated by subpoenaing the settling tort-feasor as a witness at trial or by using his testimony obtained during discovery procedures". Clearly, the court, in referring to "testimony obtained during discovery procedures", was referring to procedures completed before settlement. After settlement, the settling tort-feasor would have to be deposed as a witness, just as he could only be subpoenaed as a witness to testify at the trial.

Accordingly, if the pleadings here merely alleged negligence on the part of tort-feasors who could only be held liable *in pari delicto,* as in *Mielcarek,* then the motion to amend the caption so as to delete the settling tort-feasors would clearly be meritorious, and the hospital so concedes.

However, the hospital contends that there is a crucial substantive distinction between the case at bar and *Mielcarek.* According to the hospital, the complaint herein alleges that the individual doctors were employees of the hospital and were acting within the scope of their employment when they

allegedly committed acts of malpractice. Therefore, the hospital argues that the complaint, read in its broadest form, clearly incorporates a cause of action under the doctrine of *respondeat superior.* It is possible, argues the hospital, that facts could be offered and evidence adduced, consistent with the pleadings, which could result in a jury question on this issue. A finding by the jury that the doctors were employees of the hospital and were acting within the scope of their employment when they allegedly committed acts of malpractice would lead to a finding of liability against the hospital based on the doctrine of *respondeat superior.* Under those circumstances, the hospital would have a cause of action in common-law indemnification against the individual doctors (see *Bing v Thunig,* 2 NY2d 656; *Hollant v North Shore Hosp.,* 24 Misc 2d 892, 896, affd 17 AD2d 974). However, there is a fallacy in the hospital's argument. Notwithstanding any finding by the jury with regard to plaintiff's cause of action against the hospital, the fact remains that with regard to any possible third-party action between the hospital and the individual doctors, the former is bound by its admission in its affidavit in opposition to the motion to reargue and in its answer to the notice to admit that the individual doctors were independent contractors and not employees (see CPLR 3123, subd [b]). Accordingly, there is no longer any basis in this action for the hospital to be fully indemnified by the doctors based on an employer-employee relationship and the principle of *respondeat superior.* (Although a hospital may be held vicariously liable for the negligent acts of an independent contractor-physician, that principle is limited to the situation where the doctor holds himself out to the public in such a manner as to cause patients entering the hospital to assume that the doctor was acting on the hospital's behalf, e.g., the director of a hospital emergency room [see *Mduba v Benedictine Hosp.,* 52 AD2d 450, 453]. The facts in *Mduba* are clearly distinguishable from those at bar which involve two obstetricians hired by the plaintiff, as well as an anaesthesiologist.)

It should be noted that the notice to admit and the hospital's response thereto are not properly part of the record on appeal, since they both were served subsequent to the orders appealed from. The established procedure in this situation would be to remit the case to Special Term so that it could evaluate the effect of the hospital's admission in response to the notice to admit (see *Crawford v Merrill Lynch, Pierce,*

*Fenner & Smith,* 35 NY2d 291, 299). However, in the case at bar, the hospital has not in any way disputed the existence or authenticity of its admission in response to the notice to admit. Nor has it contested the propriety of its inclusion in the record on appeal. Under these circumstances, and in view of the fact that the hospital's response to the notice to admit merely reiterated an admission by the hospital to the same effect which was made earlier in the case (i.e., in its affidavit in opposition to the motion to reargue), it is readily apparent that to remit the case to Special Term would be inappropriate since it would only "prolong the appeal and accomplish little else" *(Crawford v Merrill Lynch, Pierce, Fenner & Smith, supra,* p 299).

Notwithstanding this admission and the ramifications thereof, the hospital contends that "when read in amplification of plaintiff's Complaint it is clear that plaintiff's complaints of negligence and medical malpractice are, in reality, directed to the co-defendant physicians and not the hospital. Under these circumstances the defendant hospital would be at most passively negligent and would have a common-law implied right of indemnification over and against the co-defendant physicians".

Specifically, the hospital contends in its brief that the plaintiff may be able to prove at trial that other employees of the hospital, i.e., nurses and attendants, followed the negligent direction of the defendant physicians. Under these circumstances, the hospital argues, it would be vicariously liable for the passive negligence of its nurses and attendants and it would have a right to indemnification (since the hospital stands in the shoes of its employees) against the doctors.

However, the reasoning advanced by the hospital is misplaced and totally inapplicable to the facts at bar by virtue of the Court of Appeals' decision in *Dole v Dow Chem. Co.* (30 NY2d 143, *supra).* In *Dole* (pp 147-148) the Court of Appeals noted that the "theoretical bar at common law to any apportionment" among joint tort-feasors, "either by indemnity or by contribution" had been weakened by CPLR 1401 which allows one joint tort-feasor to seek contribution from another and by the "elusive" active-passive test concept which, as developed in New York, constituted "an abandonment of the rigorous common-law policy, since it allows full indemnity in favor of one found to be passively negligent against another found to be actively negligent". The Court of Appeals abrogated the

active-passive test and held that where a third party is responsible for part, but not all of the negligence complained of, the jury must make an apportionment of responsibility between the joint tort-feasors. However, "[n]othing in *Dole* abrogates the common-law right of indemnity if such a right existed prior to the *Dole* decision" (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 1404:2, p 382). As the Court of Appeals stated in *Rogers v Dorchester Assoc.* (32 NY2d 553, 566): "the apportionment rule applies to those who in fact share responsibility for causing the accident or harm, and does not extend further to those who are only vicariously liable, as the employer of a negligent employee, the owner of a motor vehicle operated by a negligent driver, or, as here, the owner of a building who contracts with an independent contractor exclusively responsible for maintenance of the building or parts of it".

There are only three possibilities in the hypothetical situation posed by the hospital, i.e., that nurses or attendants, as employees of the hospital, obediently followed the negligent direction of the doctors. If, under the facts of this case, the hospital completely surrendered control of these employees with the result that the employees became the special employees of the defendant physicians, then the hospital would not be liable at all for the employees' acts. If on the other hand, these employees remained employees of the hospital, then they either acted reasonably in obediently following the negligent direction of the doctors, or they acted unreasonably, i.e., negligently, in so doing. If the employees acted reasonably, then again the hospital would not be liable to the plaintiff in the first instance and indemnification would obviously not lie. If the employees acted negligently, then the hospital would be liable to plaintiff for their negligent acts based on the doctrine of *respondeat superior.* However, notwithstanding the vicarious liability of the hospital based on the negligent acts of its employees, it would under those circumstances, standing in the shoes of its employees, be a joint tort-feasor with respect to the other named tort-feasors, i.e., the individual doctors. Accordingly, under those circumstances, the hospital would not have a right to full indemnification from the doctors but would only have the right to have its responsibility with respect to damages apportioned pursuant to *Dole,* and in this case, where the other tort-feasors have settled, to have the amount of damages it was required to pay

determined pursuant to section 15-108 of the General Obligations Law. (Of course, the hospital would have a right of full indemnification against the employees.)

Accordingly, the doctors had "no place as [parties] in this lawsuit" *(Mielcarek v Knights,* 50 AD2d 122, 128, *supra),* once they settled with the plaintiff, and, therefore, their motion should have been granted.

LATHAM, J. P., and DAMIANI, J., concur with TITONE, J.; SUOZZI, J., concurs in the dismissal of the appeal from the order entered February 22, 1978, but otherwise dissents and votes to grant the appellants' motion to amend the caption in the above-entitled action by deleting their names as parties defendant, with an opinion.

Appeal from an order of the Supreme Court, Westchester County, entered February 22, 1978, dismissed. No appeal lies from an order denying a motion to reargue. Order of the same court entered December 28, 1977, affirmed. The respondent is awarded one bill of $50 costs and disbursements to cover both appeals.