■ CELESTE C. SANTIAGO, Appellant, v HAMILTON ARCHER, as Trustee of Local 485 Health and Welfare Fund, et al., Respondents, et al., Defendants.—In an action to recover damages for medical malpractice, the plaintiff appeals (1) from an order and judgment (one paper) of the Supreme Court, Kings County (Dowd, J.), dated March 4, 1986, which, upon granting the respondents' motion for summary judgment dismissing the complaint, is in favor of the respondents and against her, and (2) as limited by her brief, from so much of an order of the same court, dated June 25, 1986, as, upon reargument, adhered to the original determination.

Ordered that the appeal from the order and judgment dated March 4, 1986 is dismissed, as that order and judgment was superseded by the order dated June 25, 1986, made upon reargument; and it is further,

Ordered that the order dated June 25, 1986 is reversed insofar as appealed from, on the law, the order and judgment dated March 4, 1986 is vacated, and the motion is denied; and it is further,

Ordered that the plaintiff is awarded one bill of costs.

The plaintiff's claim is based on the alleged failure of the physicians at a medical facility operated under the auspices of the defendant Local 485 Health and Welfare Fund (hereinafter the Fund) to diagnose and treat fibroids of her uterus. The plaintiff alleged that because of a misdiagnosis made by the clinic physicians the fibroids grew larger, necessitating a complete hysterectomy. The plaintiff's case is predicated upon a theory of apparent or ostensible agency pursuant to which she seeks to hold the Fund and Local 485 of the International Union of Electrical, Radio and Machine Workers (hereinafter Local 485) vicariously liable.

The plaintiff participated in the Fund's employee benefit plan which offered medical benefits to members of Local 485.

The Fund was created under the collective bargaining agreement between the Local and employers of the Local's members. The Local encouraged its members to seek treatment and receive physical examinations at a medical clinic located in a building it owned and which housed its central offices. Dr. Feyvus Landman directed the operation of the clinic pursuant to a contract between himself and the Fund. The Fund's principal means of promoting use of the facility was through its handbook entitled "Local 485 Health and Welfare Fund". The handbook specifically referred to the clinic as the "Local 485 Diagnostic and Treatment Clinic" and the "Local 485 Medical Center". It also contained various references to "[o]ur Treatment Center", "our Medical Director", "our Medical Center" and "the Fund's Treatment Clinic".

The Local and the Fund moved to dismiss the complaint on the ground that Dr. Landman was an independent contractor who leased office space from the Fund and directed the operation of the clinic and, thus, neither the Local nor the Fund could be held vicariously liable for his acts or the acts of any of the physicians he employed to staff the clinic. The Supreme Court granted the motion. We reverse.

The Court of Appeals first recognized in *Hannon v Siegel-Cooper Co.* (167 NY 244) the doctrine of apparent or ostensible agency (sometimes referred to as agency by estoppel or by holding out) as a predicate for malpractice liability. This doctrine provides, in sum, that a plaintiff has a right to expect not only that the person upon whom he or she relies for special services will hire skillful employees, but also that if the servant is guilty of any malpractice, the person upon whom the plaintiff relied in the first instance will be answerable therefor in damages *(Hannon v Siegel-Cooper Co., supra,* at 247; *see also, Hill v St. Clare's Hosp.,* 67 NY2d 72, 80). Patients seeking medical help and the plaintiffs seeking redress for alleged malpractice should not be bound by secret limitations contained in private contracts *(see, Mduba v Benedictine Hosp.,* 52 AD2d 450, 453; *Hannon v Siegel-Cooper Co., supra; see also, Lanza v Parkeast Hosp.,* 102 AD2d 741). Upon our review of the record before us, we find triable issues of fact concerning whether the Fund and/or the Local held themselves out as health care providers and whether they were therefore estopped on a theory of apparent agency from disclaiming liability arising from the malpractice of physicians working within the clinic operated under their name *(see, Hill v St. Clare's Hosp., supra; Barker v Saltzman,* 124 AD2d 617; *Lanza v Parkeast Hosp., supra).*

We also find that whether Dr. Landman was an independent contractor may not be determined upon the instant record. "Whether a person is an 'employee' or an 'independent contractor' is an ultimate fact to be determined from the evidence itself. It may be called a conclusion to be drawn from the contract itself, the attitude of the parties toward each other, the nature of the work *and all relevant circumstances*" *(Felice v St. Agnes Hosp.,* 65 AD2d 388, 396; *see also, Nobel v Ambrosio,* 120 AD2d 715, 716). The question of whether the Local and/or the Fund exercised sufficient control over the operation of the clinic and over Dr. Landman as its director to make them vicariously liable for the negligence of physicians practicing therein has not been sufficiently established to warrant the grant of summary judgment.

Lastly, we find the ruling of the Appellate Division, First Department, in the case of *Mitts v H.I.P. of Greater N. Y.* (104 AD2d 318), upon which the Supreme Court's decision rested, to be inapposite on its facts. The reason given by the court in *Mitts (supra)* for holding that the defendant Health Insurance Plan of Greater New York (hereinafter H.I.P.) was not responsible for the malpractice of physicians in a certain medical group was that H.I.P. simply sold medical expense indemnity insurance and did not render medical service. Conversely, at bar, the record indicates that the Local and/or the Fund may have held themselves out as the provider of medical services and not just as a medical insurer. Thompson, J. P., Brown, Eiber and Sullivan, JJ., concur.