■ DONNA HYLTON, Appellant, v FLUSHING HOSPITAL AND MEDICAL CENTER et al., Defendants, and BRAVO MEDICAL ADMINISTRATORS CORPORATION, Doing Business as MEDICAL DENTAL SERVICES, Also Known as FORDHAM MEDICAL DENTAL SERVICES, Respondent. [630 NYS2d 748] —Judgment, Supreme Court, Bronx County (Luis Gonzalez, J.), entered September 8, 1994, which granted defendant Bravo Medical Administrators Corporation's motion for summary judgment dismissing the complaint against it, unanimously affirmed, without costs. Appeal from order, same court and Justice, entered June 27, 1994, dismissed as subsumed in the appeal from the judgment entered thereon.

Plaintiff received obstetrical treatment from defendant Devbala Ramanathan, M.D. on premises owned by defendant-respondent Bravo Medical Administrators Corporation. The complaint, as supplemented by the bill of particulars, alleges that, commencing on or about January 9, 1988 and in a course of continuous treatment ending July 21, 1988, defendant Dr. Ramanathan rendered prenatal care and treatment to plaintiff, including labor and delivery and a subsequent tubal ligation. Thereafter, on July 28, 1988, plaintiff suffered a stroke which, it is alleged, should have been diagnosed earlier.

Liability against defendant-respondent Bravo, the owner of the premises leased, variously, to defendant physician and other medical practitioners, is predicated upon the theory that it holds itself out to the general community as a provider of medical and dental services. In support of this unusual extension of medical malpractice liability to a landlord, plaintiff directs the Court's attention to testimony that the building has an awning that reads "Medical and Dental Services" and that, when the building was first occupied in the late 1970's, a flyer was sent out advertising the availability of services by licensed medical practitioners at that location. Plaintiff places significance on Dr. Ramanathan's reference to the building as a "clinic" and the presence of a receptionist, who referred plaintiff to the doctor's office. Plaintiff also makes reference to equivocal testimony regarding signs displaying the medical services available and to the certificate of incorporation of defendant Bravo and its statement of corporate purpose "to advise, manage and consult with those engaged in the practice of medicine".

Plaintiff does not state why a sign informing that "Medical and Dental Services" are provided on the premises requires the conclusion that they necessarily house a clinic and not the offices of individual practitioners. The same can be said of the

flyers circulated when the building opened, especially in the absence of testimony that plaintiff ever saw such a notice. The receptionist did not take any information from plaintiff concerning her condition, medical history, insurance or the nature of her visit. There is no evidence that the receptionist was employed by Bravo, and there is testimony that, to the contrary, a receptionist was engaged by the physicians who rent space in the building. Finally, plaintiff does not allege that the contents of defendant Bravo's certificate of incorporation were known in the community and, in any event, the provision of consulting and managerial services to physicians is a legitimate corporate purpose, hardly tantamount to the practice of medicine.

The cases relied upon by plaintiff do not support the imposition of liability on the corporate defendant. In *Hannon v Siegel-Cooper Co.* (167 NY 244), the issue of whether the defendant held itself out as a provider of medical services had already been determined as a matter of fact. The Court noted *(supra,* at 246) that "the unanimous affirmance of the Appellate Division is conclusive to the effect that it either practiced dentistry or held itself out as practicing dentistry."

In *Hill v St. Clare's Hosp.* (67 NY2d 72), the defendant held vicariously liable was a physician who consented to use the name of the clinic in his practice. Bills were submitted to patients bearing the name of the clinic, payment was made to the defendant doctor who operated the facility and checks were deposited in an account accessible only to him. Payments were disbursed from that account to the other doctors as their "draw" for clinic services.

As the Court of Appeals emphasized in *Hill v St. Clare's Hosp.* (*supra,* at 79), "that a physician is a shareholder, officer or employee of a professional service corporation does not make him vicariously liable for the malpractice of another doctor who is an officer, director and employee of the corporation" (citing *Connell v Hayden,* 83 AD2d 30, 49-59; Business Corporation Law § 1505 [a]). In the matter before us, the corporate defendant is not a professional service corporation and its president is not a physician. Nor is there evidence to suggest that bills were submitted to plaintiff on behalf of Bravo or that it has any financial interest in defendant physician's practice other than receiving monthly rent payments. Significantly, the appointment cards used by defendant physician bear only her name.

Plaintiff's subjective impression that Bravo operates a clinic on the premises is hardly probative, especially as she refers, in

her testimony, to any other facility where she was seen by physicians as a "clinic" (cf., *Santiago v Archer*, 136 AD2d 690, 691). It is settled that liability in malpractice generally rests upon actual agency and control over the tortfeasor and not on mere association (*Sawh v Schoen*, 215 AD2d 291). Plaintiff cannot rely on conjecture and inference to establish agency, either actual or ostensible. "As this Court recently noted, 'Rank speculation is no substitute for evidentiary proof in admissible form that is required to establish the existence of a material issue of fact and, thus, defeat a motion for summary judgment' " (*supra*, at 293, quoting *Tungsupong v Bronx-Lebanon Hosp. Ctr.*, 213 AD2d 236, 238, and citing *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324; *Parks v Greenberg*, 161 AD2d 467, 468, *lv denied* 76 NY2d 712).

This is not a situation where the plaintiff had any basis upon which to expect that the care she received was provided by the defendant from which she seeks to recover. Unlike *Mduba v Benedictine Hosp.* (52 AD2d 450, 453), in which the plaintiff received treatment at a hospital emergency room staffed by independent physicians, plaintiff herein did not undergo a course of treatment under the presumption that it was provided by the physician defendant's landlord (*see also*, *Mondello v New York Blood Ctr.—Greater N. Y. Blood Program*, 80 NY2d 219, 229 [no basis to assign a general expectation or credit subjective individual beliefs where responsibility is reposed by regulation in sophisticated and specialized entities]). To hold defendant Bravo answerable in damages under the circumstances of this case would expose to liability for medical malpractice every landlord with the word "medical" appearing on its premises. Such a result oversteps the line "between the competing policy considerations of providing a remedy to everyone who is injured and of extending exposure to tort liability almost without limit" (*De Angelis v Lutheran Med. Ctr.*, 58 NY2d 1053, 1055). Concur—Sullivan, J. P., Rubin, Ross, Nardelli and Mazzarelli, JJ.