OPINION OF THE COURT
Rose H. Sconiers, J.
Following the close of plaintiff’s proof on the issue of liability, defendant Mount St. Mary’s Hospital of Niagara Falls (Hospital), pursuant to CPLR 4401, seeks judgment dismissing the plaintiff’s complaint. Defendant Hospital contends and plaintiff concedes that plaintiff’s proof has failed to establish a prima facie case of negligence in the Hospital’s care and treatment of Donald Lewis and that the Hospital cannot be held vicariously liable for any acts or omissions of the private attending surgeons, i.e., Drs. Charles D. Rice and Alfred J. Bax.
Plaintiff argues, however, that the defendant anesthesiologists, Drs. Mary Ann Bishara and Jae Sung Lee, as members of defendant, Central Anesthesia Services (CAS), were acting under the Hospital’s control or as its apparent or ostensible agents.
Initially, plaintiff asserts that whenever a patient arrives at a hospital seeking service from the hospital and not from a particular doctor and when such service is provided by the hospital through an independent contract, those physicians performing thereunder are to be deemed agents of the hospital, as a matter of law. In pressing this point, counsel for plaintiff, however, misstates those cases upon which he relies.
While it is now well founded that a hospital may be held vicariously liable for the malpractice of a physician who *203 provides medical services as an independent contractor, such issue still turns on elements of control and/or ostensible agency. It thus falls to plaintiff to establish sufficient evidentiary proof demonstrating the degree of control retained by the hospital in determining the manner in which and by whom the patient will be treated or, alternatively, to demonstrate, from the surrounding circumstances, that it was otherwise reasonable for the patient to believe that the servicing physician was provided by the hospital or acting on the hospital’s behalf. (See, Hill v St. Clare’s Hosp., 67 NY2d 72 [1986]; Mduba v Benedictine Hosp., 52 AD2d 450 [1976]; Casucci v Kenmore Mercy Hosp., 144 AD2d 910 [1988]; Noble v Porter, 188 AD2d 1066 [1992]; Agustin v Beth Israel Hosp., 185 AD2d 203 [1992]; Litwak v Our Lady of Victory Hosp., 238 AD2d 881 [1997]; Sahr v Niagara Falls Mem. Med. Ctr., Sup Ct, Niagara County, Feb. 4, 1998.)
Essentially, plaintiff’s evidence adduced at trial established that the Hospital had an oral contract with CAS wherein CAS would provide anesthesiology coverage for scheduled surgeries. Each anesthesiologist member of CAS was required to be certified by the Hospital’s credentialling body and approved for staff privileges; to meet those standards established by the Hospital’s Department of Anesthesiology; and to abide by all medical staff rules, regulations, policies and procedures — in the same fashion as any other independent physicians seeking staff privileges. Upon obtaining a schedule of forthcoming surgeries from Hospital personnel, CAS would assign out its members to assure adequate coverage. Once in the operating suite, the assigned anesthesiologist would utilize the anesthesia equipment and medical supplies provided and maintained by the Hospital.
Such proof, this court finds, does not establish a prima facie showing that the Hospital had control over how and by whom anesthesia was to be administered to patients by CAS. Excepting the fact that the Hospital limited its anesthesiology service to only that provided by CAS, its control over and its restrictions placed upon the individual anesthesiologists were no greater than that impressed upon other physician staff members. Nor is the fact that certain equipment and medical supplies are furnished by the Hospital to the anesthesiologist compelling. As is customary within the medical profession and to a varying degree, often depending upon the area of specialty and available medical equipment, all staff physicians are provided the privilege of utilizing the Hospital’s facilities and equipment.
*204 Therefore, not only is the issue of the Hospital’s control over the defendant anesthesiologists, nor any other indicia of an actual agency relationship, not demonstrated, as a matter of law, it is also not found to have been established even as an issue of fact.
Accordingly, so much of plaintiffs complaint premised thereon is dismissed.
What is compelling to this court, although only noted by both plaintiff and defendant Hospital in a passing manner, is the question of whether, under the circumstances of this case, an apparent or ostensible agency existed wherein it was reasonable for the decedent to have believed that those anesthesiologists attending at his gallbladder operation were “provided by the hospital or otherwise acting on the hospital’s behalf’ (Casucci v Kenmore Mercy Hosp., 144 AD2d 910, supra, citing Felice v St. Agnes Hosp., 65 AD2d 388, 396).
It is, I believe, accepted fact in this case and, indeed, customary practice within the local medical service community that anesthesiology services were not and are not generally discussed with the patient, preoperatively. Of necessity, operating physicians schedule surgery at those hospitals where they have staff privileges. In turn, these hospitals provide the facilities, equipment, administrative and nursing staff necessary to complete the contemplated surgical procedure. Inclusive therein is the administration of any necessary anesthesia. While oftentimes the type and extent of the anesthetic procedure is discussed with the patient, the question of who will be administering and monitoring the anesthesia is not. To the patient then, this procedure may appear to be but one of the many services that he will receive from the hospital during his admission.
Admittedly, the instant issue is not entirely analogous with those cases cited herein, in which a patient presents himself for treatment to a hospital’s emergency department and is thereupon provided physicians and staff to treat him. In those cases, material issue of fact were found to exist concerning whether the patient could assume that the medical staff rendering treatment in a hospital emergency room, which is open to all the public, did so on behalf of the hospital and thus whether an “agency by estoppel” was created which would hold the hospital vicariously liable for the negligence of an emergency room physician or staff member.
Nevertheless, from the surrounding circumstances of this case, limited as they may be, the court believes that in this *205 wrongful death action, a prima facie showing of an “agency by estoppel” has been presented enabling the jury to determine whether it was reasonable for the decedent to believe that the anesthesiology services necessary to his operation were being provided by the Hospital or at least by anesthesiologists acting on behalf of defendant Hospital.
For this reason, defendant Hospital’s motion for a trial judgment of dismissal is denied.