Escudero v Long Beach Med. Ctr. (2003 NY Slip Op 51480(U))

[*1]

Escudero v Long Beach Med. Ctr.

2003 NY Slip Op 51480(U)

Decided on December 5, 2003

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through April 17, 2015; it will not be published in the printed Official Reports.

Decided on December 5, 2003

Supreme Court, New York County
 MARIA ESCUDERO and NICOLASA PACHECO, as Co-Guardians of the Person and Property of JOSE HERNANDEZ a/k/a JOSEPH HERNANDEZ, an incapacitated person, Plaintiffs, - -
against
LONG BEACH MEDICAL CENTER, MOUNT SINAI HOSPITAL, NATIONAL EMERGENCY SERVICES, INC., and DR. ALBERT LEE, Defendants.
Index No. 105803/03

Alice SCHLESINGER, J.
On June 23, 2002, Jose Hernandez (a.k.a. Joseph) went to the Emergency Room of defendant Long Beach Medical Center ("Long Beach") complaining of acute pain in his left eye. He was examined there by co-defendant Dr. Albert Lee. Soon after, before even leaving the facility, Mr. Hernandez suffered a subdural hematoma which required emergency surgery. The aftermath of this is a claim of serious permanent mental and physical incapacitation.
Co-guardians for Mr. Hernandez commenced a lawsuit on his behalf against Long Beach alleging medical malpractice. They also included as defendants Dr. Lee, National Emergency Services, Inc. and Mount Sinai Hospital ("Hospital" or "Mount Sinai"). The Hospital is now moving for summary judgment dismissing the claims against it, in their entirety, pursuant to CPLR §3212. Mount Sinai has answered the complaint, as have the other two institutional defendants, but there has been no discovery. Dr. Lee had not yet been served when this motion was made.
Long Beach, who clearly supports the Hospital's motion, has cross-moved to change venue to Nassau County pursuant to CPLR §510(1). The plaintiffs vigorously oppose both motions.
The Hospital argues that, even at this early stage, it is entitled to a dismissal because there can be no evidence of any departure by it from accepted standards of medical practice. Nor can there be presented any evidence showing that actions by the Hospital proximately caused Mr. Hernandez's injuries. In this regard, the Hospital points out that Mr. Hernandez never received any care at Mount Sinai and in fact was never there. All the events of significance occurred on June 23, 2002 at Long Beach Medical Center.
The Hospital suggests that plaintiffs' sole reason for naming Mount Sinai as a defendant is that Long Beach is a "clinical affiliate" of Mount Sinai. They argue that, as shown in an accompanying affidavit by Robert Southwick, Director of Alliance Development at Mount Sinai NYU Health, the agreements establishing this "affiliation" are very limited in scope and insufficient to establish liability on the part of Mount Sinai.
There are, in fact, two agreements, the Alliance Agreement dated December 12, 1994 and the Transfer Agreement dated January 1997. Mr. Southwick points out that a principal purpose of [*2]the Alliance Agreement was "to provide opportunities for managed care through development of an integrated delivery system". In the Agreement, Long Beach was specifically permitted to describe itself as "a clinical affiliate of the Mount Sinai Hospital".
Primarily, the Hospital agreed to provide Long Beach tertiary care services, meaning that the former would accept the transfer of the latter's patients to it when tertiary care, including specialized diagnostic services, were needed. "Tertiary care" is defined, in the "Physician and Managed Care Glossary" complied by New York Medical College, as "subspecialty care usually requiring the facilities of a university affiliated or teaching hospital that has extensive diagnostic and treatment capabilities". Mount Sinai is such an institution. Long Beach, a community hospital, is not.
Mr. Southwick continues that the Agreements do not provide for the rotation of any Mount Sinai physicians, including residents, to the Long Beach Emergency Department. Indeed, pursuant to an inquiry made by the Hospital after being noticed with this lawsuit, no residents were rotating to Long Beach on June 23, 2002, the date when Mr. Hernandez was there. Further, the Hospital says, the doctor charged with caring for Mr. Hernandez, Dr. Albert Lee, had no affiliation with Mount Sinai, and the Emergency Department chart for Mr. Hernandez contains no reference to the Hospital.
It is on these facts and assertions that Mount Sinai urges that it is entitled to the dismissal of the complaint against it.
In the cross-motion, Long Beach moves pursuant to CPLR §510(1) to change venue to Nassau County, where its facility is located. Long Beach argues that, assuming that Mount Sinai is let out of the case, then no other party would have a connection with New York County, and since all of the events occurred in Nassau County, the action should be tried there.
Plaintiffs oppose the cross-motion on the merits and on the timeliness or lack of it. (See CPLR §511(a)). They believe the summary judgment motion should be denied, keeping Mount Sinai as a defendant in the case and keeping the action here in New York County. But "in the unlikely event" that the Hospital's motion is granted, plaintiffs argue that venue should still not be changed because New York County was a proper choice when the action was commenced.
As to the main motion, plaintiffs urge the Court to deny the requested dismissal on the merits and/or because it is premature. In other words, pursuant to CPLR §3212(f) and the complete lack of discovery, they say they lack the factual wherewithal at this time to satisfactorily address the issues.
Nevertheless, plaintiffs do present a picture of a sign directly outside the Long Beach facility which identifies that Medical Center as "a clinical affiliate of the Mount Sinai Hospital". Further, in this regard, is the letterhead of Long Beach containing the same legend, directly under its name. Finally, plaintiffs point out that even Mr. Southwick acknowledged, in his affidavit in support of the Hospital's motion, that "a principal purpose of Mount Sinai's Alliance Agreement with Long Beach was to provide opportunities for managed care through development of an integrated delivery system."
Armed with these limited facts, plaintiffs urge that, at a minimum, because the Hospital and Long Beach did have some affiliation, specifically a "clinical" one which was announced repeatedly in a very public way, Long Beach became the Hospital's agent for the treatment of patients coming to its Emergency Room. As such, plaintiffs assert, the Hospital is not entitled to a dismissal at this stage as a matter of law. This argument is predicated on the theories of vicarious liability and agency by estoppel.
[*3]
The Hospital counters that no further disclosure is necessary, as it would be irrelevant to the ultimate outcome. Again, they rely on the Agreements between the institutions and point out that these Agreements give Mount Sinai no right to control any actions or policies of Long Beach. In fact, they point out that in situations such as this one, the Agreements provide for the indemnification of the Hospital by Long Beach.
The Hospital further urges that these circumstances do not indicate any vicarious liability, particularly because here the Hospital played no part in the care or treatment of Mr. Hernandez. Each side cites to cases which, it is argued, support their respective positions. The motion papers carried over to spirited oral argument, where the Court expressed its view that the issue was a close one.
Discussion
There are actually two related theories that the plaintiffs proffer as a rationale for their claims against Mount Sinai. The first is that the Hospital is vicariously liable for the actions of the Long Beach service providers. The Hospital argues that this claim has no merit because Mount Sinai did nothing to provide care and treatment to Mr. Hernandez, and the mere fact that Long Beach was their affiliate for extremely limited purposes does not confer responsibility on the Hospital for the actions of Long Beach.
Plaintiffs rebut this contention by urging that there has been no discovery and it has yet to be determined what role, if any, Mount Sinai did have here as an affiliate of Long Beach in the treatment provided by Long Beach in its Emergency Room. The Hospital, in reply, attaches the chart for Mr. Hernandez and points out that no personnel from Mount Sinai are mentioned. However, as noted earlier, no discovery of any kind has occurred.
It is clear that, to establish a prima facie case of vicarious liability for the actions of independent entities or contractors, there must be more than simply a connection between the parties. For example, when one physician covers for another, that connection is not sufficient to establish vicarious liability. As the First Department said in Hylton v. Flushing Hospital, 218 AD2d 604, 605 (First Dep't 1995), lv. den. 87 NY2d 807 (1996): "It is settled that liability in malpractice generally rests upon actual agency and control over the tortfeasor and not on mere association". Thus, the Hylton court affirmed the summary dismissal of a medical malpractice claim against Bravo Medical Administrators Corp., finding that Bravo's leasing of space to the defendant doctor and other physicians and its display of an awning which read "Medical and Dental Services" did not establish a relationship sufficient to confer vicarious liability.
Hylton followed close on the heels of Sawh v. Schoen and D'Urso, 215 AD2d 291 (First Dep't 1995). In Sawh, Dr. D'Urso, a member of a professional corporation obstetrical medical group, moved for summary judgment on the ground that he had provided no actual care to the patient. Although Dr. D'Urso had previously treated the plaintiff for other conditions, and did participate in weekly meetings that discussed all the doctors' patients, the plaintiff had received the actual obstetrical care only from the other two doctor members. The First Department held that this association or connection did not confer upon Dr. D'Urso any duty to the plaintiff to advise the actual treating physicians on the management of this high risk patient. 215 A.D.2d at 293. The Appellate Division therefore reversed the trial court's denial of summary judgment and dismissed the complaint against Dr. D'Urso.
Similarly, in Kamhi v. Tay, 244 AD2d 266 (First Dep't 1997), where the defendant was listed [*4]as a member of a psychotherapy clinic's advisory board but never actually saw or treated the plaintiff patient, there was no duty to the patient and no liability for malpractice allegedly committed by others. The movant here also relies on Slavik v. Parkway Hospital, 242 AD2d 376 (Second Dep't 1997). There the court found that a theory of vicarious liability could not succeed against a leasing corporation doing business as "Corona Medical & Dental Center", based solely on the leasing of office space to the defendant medical doctor and other health professionals and the inclusion of the term "medical" in its advertisements.
Plaintiffs vigorously argue against summary judgment, asserting that enough is not yet known here vis-a-vis the care and treatment received by Mr. Hernandez or any actual involvement or control by Mount Sinai for this Court to reject the theory of vicarious liability as a matter of law. They point out that this situation differs from the cases cited, where the plaintiff patient sought out or was under the care of a particular doctor, because here Mr. Hernandez simply went on his own to the Emergency Room at Long Beach Medical Center for care.
The Court finds that the distinction made by plaintiffs is a crucial one which also serves as a bridge between the theory of vicarious liability, where the elements of actual participation and control are critical, and the second theory argued here, that of ostensible agency or agency by estoppel.
The theory of agency by estoppel in the medical malpractice field was first spelled out by the Court of Appeals in Hannon v. Siegel-Cooper Co., 167 N.Y. 244 (1901). Hannon involved a suit against a department store which advertised itself as carrying on the practice of dentistry in one of its departments. In fact, the department was leased to an unrelated individual, a Mr. Hayes, who then employed a Dr. Cooney to provide the dental services. The allegedly negligent services of Dr. Cooney formed the predicate for the lawsuit, wherein the plaintiff prevailed at trial against the department store as well based on proof that she had relied on representations made by the store that they were conducting a dental business. The court, in sustaining the verdict, said that plaintiff was entitled to two things: "to rely not only on the presumption that the defendant [department store] would employ a skillful dentist as its servant, but also on the fact that if that servant, whether skillful or not, was guilty of any malpractice, she had a responsible party to answer therefor in damages." 167 N.Y. at 247
This theory of agency by estoppel was further elaborated upon in decisions such as Hill v. St. Clare's Hospital, 67 NY2d 72 (1986), which cited Hannon, supra, Mduba v. Benedictine Hosp., 52 AD2d 450 (Third Dep't 1976), and Lanza v Parkeast Hospital, 102 AD2d 741 (First Dep't, 1984). Other decisions espousing the theory of agency by estoppel include Santiago v. Archer, 136 AD2d 690 (Second Dep't 1988) and Soltis v. State of New York, 172 AD2d 919 (Third Dep't 1991).
In all of the above cases, as in the instant case, the patient came either to a clinic, a medical/surgical group for an abortion, a union local's medical center, a prison infirmary, or an emergency room, looking not for a particular doctor, but rather for treatment. And in all of those cases, the issue became, not whether the facility was independent from the moving defendant or whether the doctor actually providing the services was an independent contractor, but rather did the patient reasonably assume or believe that he/she was receiving treatment from the defendant. In such cases, the patient is not bound by the secret agreements of the parties (see, Mduba, supra and Lanza, supra), and if there is such reliance, the defendants are estopped from disclaiming liability.
So here under the first theory, vicarious liability, the weaker one espoused by the plaintiffs, [*5]they would have to show specific involvement in Mr. Hernandez's care and treatment by Mount Sinai, the clinical affiliate of Long Beach. It is perhaps unlikely that they will be able to succeed in doing that, but they should at least be given an opportunity to conduct discovery and try. Under the second theory, agency by estoppel, I believe enough has been shown here to survive this motion.[FN1]
As noted above, Mount Sinai's name was mentioned in the signage outside the Long Beach facility. Even more significant, however, is the context in which Mount Sinai's name was used. The sign arguably announced to patients seeking emergency treatment that, though they might be obtaining it at Long Beach, a small community facility with limited services, it was a small community facility that had a clinical affiliation with Mount Sinai, a major medical teaching institution. To the extent Mr. Hernandez noted these representations and relied upon them is an issue extant which precludes the award of summary judgment to the Hospital.
Accordingly, the motion by defendant Mount Sinai to dismiss the complaint against it is denied. Since I am retaining the Hospital as a defendant, whose residence is New York County, venue will remain here. Thus, the cross-motion to change venue to Nassau County is also denied.
The parties are directed to appear before this Court in Room 222 on January 7, 2004 at 10:30 a.m. for a preliminary conference.
This constitutes the decision and order of this Court.
Dated: December , 2003
____________________________
J.S.C.
Decision Date: December 05, 2003
Footnotes

Footnote 1:Counsel for the plaintiffs, in an excess of zeal in opposing the motions, argue almost parenthetically that they should be granted summary judgment against the Hospital. To the extent that is a serious cross-motion, it is denied.